826 So.2d 256 (2002)
Patricia MARKOWITZ, et al., Petitioners,
v.
HELEN HOMES OF KENDALL CORPORATION, etc., Respondent.
No. SC96244.
Supreme Court of Florida.
September 5, 2002.
*257 Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for Petitioners.
Angela C. Flowers of Kubicki Draper, Miami, FL, for Respondent.
PARIENTE, J.
We have for review the decision of the Third District Court of Appeal in Markowitz v. Helen Homes of Kendall Corp., 736 So.2d 775 (Fla. 3d DCA 1999), which expressly and directly conflicts with the First District Court of Appeal's opinion in Thoma v. Cracker Barrel Old Country Store, Inc., 649 So.2d 277 (Fla. 1st DCA 1995), and the Fourth District Court of Appeal's opinion in Greenleaf v. Amerada Hess Corp., 626 So.2d 263 (Fla. 4th DCA 1993). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS
The Markowitzes brought suit against Helen Homes of Kendall Corporation ("Helen Homes"), alleging that while Mrs. Markowitz was visiting her mother, a resident at the nursing home operated by Helen Homes, Mrs. Markowitz slipped and fell on a grape in the main area of the nursing home facility and sustained serious injuries. The Markowitzes alleged that Mrs. Markowitz entered the facility around 1:00 p.m. at the end of the lunch hour, and at a time when residents were leaving the dining room. The hallway where Mrs. Markowitz fell was tiled with a marble-type surface and the facility's dining room was nearby. For residents to reach the elevators that would return them to their activities or rooms after eating, they were required to traverse the hallway where Mrs. Markowitz fell. The Markowitzes claimed that despite the fact that residents of the facility were elderly and infirm in varying degrees, Helen Homes permitted them to carry food from the dining room to their rooms after their meals. In addition, they claimed that three of the nursing home's employees were engaged in a conversation in the immediate vicinity of the fall and should have been aware of the presence of the grape.
After discovery, Helen Homes moved for summary judgment contending that there was no evidence that it had actual knowledge of the presence of the grape, or that the grape was on the floor for a sufficient length of time to provide it with constructive notice of the grape's presence. Helen Homes relied on the testimony of *258 the nurses, who denied knowledge of the presence of the grape, and the deposition of the building supervisor and the housekeeper, who each testified that Helen Homes' policy was that common areas are swept and cleaned several times throughout the day. For purposes of its motion for summary judgment, Helen Homes admitted that the grape was probably dropped on the floor by a resident who was bringing fruit back to his or her room.
With their response to the motion for summary judgment, the Markowitzes attached the affidavit of an expert who possesses a master's degree in health care administration and who serves as a coadministrator of a nursing home facility in South Florida. The expert stated that he was familiar with the standards pertaining to the proper administration of nursing homes and assisted living facilities. He also stated that he had reviewed the depositions and photographs of the area where Mrs. Markowitz fell, and that he concluded:
It is not reasonable to allow residents to remove food from the dining area. Residents of facilities like this should either eat in the dining area or the food should be brought to their room by an employee. Allowing residents to move through the facility with food created an unnecessary and unreasonable hazard which directly caused the Plaintiff's injury. The risk was foreseeable to Defendant since it is well known that elderly people in facilities like the Defendant's are likely to spill food because of their diminished balance, strength, and equilibrium.
The trial court granted Helen Homes' motion and entered final summary judgment. On appeal, the Third District affirmed the entry of final summary judgment "because the Markowitzes [were] unable to prove that the nursing home had actual or constructive knowledge of the spilt grape." 736 So.2d at 776. In support of this holding, the Third District stated:
There is no evidence in the record to support the Markowitzes' contention that because three nurses were in the vicinity of the fall they saw or should have seen the grape. Furthermore, there is no evidence to suggest that the grape was on the floor for a length of time that would place the nursing home on reasonable notice of its existence.
Id. In addition, the Third District rejected the Markowitzes' negligent mode of operation claim, citing Publix Super Market, Inc. v. Sanchez, 700 So.2d 405, 406 (Fla. 3d DCA 1997).
The Markowitzes argue that the Third District erred in determining that no genuine issue of material fact existed on the issue of Helen Homes' negligence. The Markowitzes support this argument with two alternative and independent grounds: (1) Helen Homes' policy of permitting its elderly residents to carry food from the dining room to their rooms, through heavily trafficked areas of the facility and without assistance or supervision, created a foreseeable and unreasonable risk of creating slip and fall hazards that would cause harm to others; i.e., Helen Homes' mode of operation was negligent; and (2) Helen Homes was on constructive notice of the particular grape on which Mrs. Markowitz slipped and fell because three of its employees were in the immediate vicinity and one was standing within inches of the grapeat a time when residents were leaving the dining room with food in their hands and returning to their rooms, and the employees unreasonably failed to detect the grape and remove it from the floor.

ANALYSIS
A trial court may grant a motion for summary judgment only "if the pleadings, *259 depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c); see Fisel v. Wynns, 667 So.2d 761, 764 (Fla.1996). When reviewing the entry of summary judgment, "an appellate court must examine the record and any supporting affidavits in the light most favorable to the non-moving party." Turner v. PCR, Inc., 754 So.2d 683, 684 (Fla.2000).
We begin our analysis with a review of the Third District's rejection of the negligent mode of operation theory. Markowitz asserts that she established evidence of a negligent mode of operation in the manner in which the nursing home allowed its residents to carry food from the dining room to their rooms. In rejecting this contention, the Third District cited to its decision in Sanchez and also relied upon the absence of a previous instance where a resident or visitor fell as a result of a "grape or other food substance" being on the floor. See Markowitz, 736 So.2d at 776.
In our recent opinion of Owens v. Publix Supermarkets, Inc., 802 So.2d 315 (Fla. 2001), we recognized the continued viability of the negligent mode of operation theory and disapproved Sanchez to the extent that Sanchez limited the negligent mode of operation theory. See Owens, 802 So.2d at 332.[1] We explained that under the negligent mode of operation theory:
If the evidence establishes a specific negligent mode of operation such that the premises owner could reasonably anticipate that dangerous conditions would arise as a result of its mode of operation, then whether the owner had actual or constructive knowledge of the specific foreign substance is not an issue. The dispositive issue is whether the specific method of operation was negligent and whether the accident occurred as a result of that negligence.
Id. In addition, we recognized that:
"Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992). It is undisputed that under Florida law, all premises owners owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition. The existence of a foreign substance on the floor is not a safe condition.
Id. at 330.
The duty of premises owners to maintain their premises in a safe condition is not exclusively limited to detecting dangerous conditions on the premises after they occur and then correcting them; the duty to exercise reasonable care may extend to taking actions to reduce, minimize, or eliminate foreseeable risks before they manifest themselves as particular dangerous conditions on the premises. Of course, the duty of care may vary with the circumstances. See, e.g., Wal-Mart Stores, Inc. v. Rogers, 714 So.2d 577, 578 (Fla. 1st DCA 1998) (whether store was negligent in manner in which it hung radios from hook *260 so as to create a dangerous condition was jury question); Ochlockonee Banks Rest., Inc. v. Colvin, 700 So.2d 1229, 1230 (Fla. 1st DCA 1997) (where jury could have determined that the defendant's negligence consisted of allowing a dangerous condition to exist by allowing people to place their drinks on the railing immediately adjacent to the dance floor); Klaue v. Galencare, Inc., 696 So.2d 933, 935 (Fla. 2d DCA 1997) ("[W]hether a business entity was negligent in stacking items on a shelf at a particular height, in a particular manner, and at a particular location thus causing a dangerous condition to exist is a jury question."); Harrell v. Beall's Dep't Store, Inc., 614 So.2d 1142, 1143 (Fla. 2d DCA 1993) (whether a department store created a dangerous condition by the manner in which it mounted a display rack is a jury question).
The mode of operation theory of negligence is not a new principle of law and is not unique to a particular business. See Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721 (1948). As we recognized in Owens,
Although this Court has never extended the mode of operation theory to a supermarket or grocery store setting, neither has this Court specifically rejected the mode of operation theory as a permissible theory of liability in these settings. In Carls Markets, Inc. v. Meyer, 69 So.2d 789, 791 (Fla.1953), for example, this Court indicated that the mode of operation principle would extend to a supermarket setting if the issue were properly pled. In that case, we explained that the Wells dog track or public amusement rule might be applicable to a supermarket or grocery store where the creator of a dangerous condition would necessarily know about the condition and therefore be held responsible for his or her own creation. See Carls Markets, 69 So.2d at 791. We explained that in Wells

the peculiar facts made it unnecessary for the plaintiff to meet the burden of establishing actual or constructive notice of a dangerous condition. In that case it was manifest that the defendant was selling bottled drinks, without providing a place for the deposit of empty bottles which could be expected therefore to roll around underfoot and become hazards to the unwary. In other words, the dangerous obstacles were the creations of the defendant who in effect was on notice as soon as the bottled refreshments were sold.

Carls Markets, 69 So.2d at 791. We thus acknowledged that "if the plaintiffs could convince the jury that the dangerous condition was created by persons connected with the store the matter of notice was inconsequential." Id.

Owens, 802 So.2d at 323-24. Thus, the negligent mode of operation theory merely recognizes the common-sense proposition of negligence law that the duty of care required under the circumstances may consist of taking reasonable precautions so as to minimize or eliminate the likelihood of a dangerous condition arising in the first instance.
In Owens, we quoted with approval from the Arizona Supreme Court in explaining that the "`mode-of-operation' rule looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident." Id. at 328 (quoting Chiara v. Fry's Food Stores of Arizona, Inc., 152 Ariz. 398, 733 P.2d 283, 285 (1987)). Thus, the basis for the negligent mode of operation theory is the claim that the specific mode of operation selected by the premises owner or operator resulted in the creation of a dangerous or unsafe condition. Under these circumstances, *261 whether the premises owner or operator possessed constructive or actual notice of the specific transitory substance is not at issue.
In this case, the Markowitzes' claim of negligent mode of operation specifically related to whether the presence of the grape was a result of the specific mode of operation chosen by the nursing home; i.e., allowing residents to carry food from the dining area to their rooms. In essence, the Markowitzes' theory of negligence was that Helen Homes' practice of permitting the elderly residents to carry food from the dining room to their rooms created a foreseeable risk that the elderly residents would spill their food and thus create dangerous conditions on the premises. In other words, under this theory, the grape was on the floor because of the mode of operation in which the nursing home permitted its residents to handle their food. Thus, under these circumstances, the focus is not on how long the grape was on the floor; rather, the focus is on whether the practice of allowing residents to carry their food to their rooms constituted a negligent mode of operation. Based on the record in this case, there was a genuine issue of material fact that precluded granting summary judgment on the negligent mode of operation theory.
We next address the Markowitzes' alternative ground that Helen Homes was on constructive notice of the grape because three of its employees were in the immediate vicinity and that the employees unreasonably failed to detect the grape and remove it from the floor. This presents a separate question of whether there was negligence in the maintenance of the premises based on whether Helen Homes had constructive notice of the fallen grape in this case. The fact that there were three employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether Helen Homes exercised reasonable care under the circumstances to maintain its premises in a safe condition.
In one of the conflict cases, Greenleaf, 626 So.2d at 264, the Fourth District held that the "fact that an employee may be able to see the location of a puddle from his or her workplace has been held to be some circumstantial evidence of constructive knowledge of the condition's existence." In Thoma, 649 So.2d at 278-79, the other case cited for conflict, the First District reversed the award of summary judgment, explaining:
The area of the fall was in clear view of Cracker Barrel employees, since they traversed it regularly on their way in and out of the kitchen. If a jury were to believe Thoma's description of the liquid as covering an area 1 foot by 2 feet, it might also be convinced that Cracker Barrel employees, in the exercise of due diligence, should have noticed the liquid before the accident....
Cracker Barrel notes that "common sense" suggests "a plethora" of reasonable inferences other than the inferences urged by appellants. We certainly agree with this observation, but take issue with the suggestion that the existence of other possible inferences requires affirmance of the summary judgment in favor of Cracker Barrel. It will be for a jury to determine whether a preponderance of the evidence supports the inferences suggested by Thoma.
In conclusion, in this case it was error to grant summary judgment in favor of Helen Homes because there was an issue of fact as to whether Helen Homes' mode of operation created a foreseeable risk of food spillage, and alternatively, whether Helen Homes had constructive knowledge of the presence of the unsafe condition.
*262 We note that subsequent to the Third District's opinion and this Court's exercise of jurisdiction in this case, this Court issued its opinion in Owens. Further, while this case was pending on appeal, the Legislature passed chapter 2002-285 relating to negligence actions involving "transitory foreign objects or substances" and enacted section 768.0710. By its terms, chapter 2002-285 became effective May 30, 2002, and applies to "all causes of actions pending on or after that date." We decline in this opinion to address the effect, validity, or applicability of this legislation because those issues are not before us, except to note that, on remand, this legislation and its effect on our decision in Owens will necessarily be issues to be considered in this case. Cf. Memorial Hospital-West Volusia, Inc. v. News-Journal Corp., 729 So.2d 373, 384 (Fla.1999) (analysis of a newly enacted statute should "follow usual procedures, with the challenge initially proceeding in the circuit court"). Accordingly, we quash the decision of the Third District and remand for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and SHAW, LEWIS, and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion, in which HARDING, Senior Justice, concurs.
WELLS, J., dissenting.
The simple facts, taken in the light most favorable to the plaintiffs, are not in dispute. While Patricia Markowitz was visiting her mother in a nursing home owned by the defendant, Helen Homes of Kendall Corporation, she slipped on a grape, fell, and injured herself. The accident, which took place as residents were leaving the dining hall following lunch, occurred in a first-floor hallway not far from the dining hall. Residents were allowed to take food from the dining hall to their rooms, and the parties agree that the grape probably was dropped on the floor by a resident. The hallway had been swept and cleaned earlier while the residents were at lunch. There had been no prior slips on food products at the nursing home.
Three employees were present at a nearby nursing station at the time of the accident; all three had just returned to the nursing station from the dining hall and had traversed the area where the accident occurred; and none of them saw a grape on the floor. The three employees were engaged in the following activities at the time of the accident: a nurse's aide was behind the counter filing papers; the nursing supervisor was sitting behind the counter speaking to the aide; and a second aide was standing in front of the counter speaking to the other two employees with her back turned towards the hallway.
Markowitz sued Helen Homes. After pretrial discovery, the trial court granted summary judgment in favor of Helen Homes, and the district court affirmed based on the following reasoning:
We affirm the entry of Final Summary Judgment because the Markowitzes are unable to prove that the nursing home had actual or constructive knowledge of the spilt grape. There is no evidence in the record to support the Markowitzes' contention that because three nurses were in the vicinity of the fall they saw or should have seen the grape. Furthermore, there is no evidence to suggest that the grape was on the floor for a length of time that would place the nursing home on reasonable notice of its existence. Additionally, the Markowitzes are unable to establish that the nursing home's method of operation is negligent. There is no evidence of a previous instance where a grape or other food substance was on the floor and *263 resulted in injury to a resident or visitor so as to put the nursing home on notice that they should be looking for food.
Markowitz v. Helen Homes of Kendall Corp., 736 So.2d 775, 776 (Fla. 3d DCA 1999) (citations omitted). The present majority opinion relies on this Court's opinion in Owens v. Publix Supermarkets, Inc., 802 So.2d 315 (Fla.2001), to quash the district court decision. I disagree. I would not extend the Owens "mode of operation" doctrine to the present case. Furthermore, I conclude that, based upon our case law, newly enacted section 768.0710, Florida Statutes (2002), cannot be applied to the issue of this defendant's liability because this incident occurred prior to the adoption of the statute. State Farm Mutual Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995).
The plaintiff in Owens was a supermarket customer who slipped on a piece of discolored banana, fell, and injured herself. The trial court granted a directed verdict in favor of the supermarket, and the district court affirmed. This Court reversed based on an exhaustive survey of slip-and-fall cases in Florida and other jurisdictions. The survey focused on cases arising in a retail setting, primarily in supermarkets, grocery stores, and restaurants.
Having surveyed cases in this State as well as in other jurisdictions, we conclude that modern-day supermarkets, self-service marts, cafeterias, fast-food restaurants and other business premises should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business. Indeed, the very operation of many of these types of establishments requires that the customers select merchandise directly from the store's displays, which are arranged to invite customers to focus on the displays and not on the floors. In addition, the premises owners are in a superior position to establish that they did or did not regularly maintain the premises in a safe condition and they are generally in a superior position to ascertain what occurred by making an immediate investigation, interviewing witnesses and taking photographs. In each of these cases, the nature of the defendant's business gives rise to a substantial risk of injury to customers from slip-and-fall accidents and that the plaintiffs injury was caused by such an accident within the zone of risk.
Owens, 802 So.2d at 330.
In Owens, the Court addressed three legal doctrines: (1) "burden-shifting"; (2) "mode of operation"; and (3) "constructive knowledge." The Court's ruling as to each doctrine was as follows:
[1] Accordingly, we adopt the following holding to be applied to slip-and-fall cases in business premises involving transitory foreign substances. We hold that the existence of a foreign substance on the floor of a business premises that causes a customer to fall and be injured is not a safe condition and the existence of that unsafe condition creates a rebuttable presumption that the premises owner did not maintain the premises in a reasonably safe condition.
Thus, once the plaintiff establishes that he or she fell as a result of a transitory foreign substance, a rebuttable presumption of negligence arises. At that point, the burden shifts to the defendant to show by the greater weight of evidence that it exercised reasonable care in the maintenance of the premises under the circumstances....
. . . .
[2] As to the theory of mode of operation,... we recognize the continued viability of the mode of operation theory. If the evidence establishes a specific *264 negligent mode of operation such that the premises owner could reasonably anticipate that dangerous conditions would arise as a result of its mode of operation, then whether the owner had actual or constructive knowledge of the specific transitory foreign substance is not an issue. The dispositive issue is whether the specific method of operation was negligent and whether the accident occurred as a result of that negligence....
. . . .
[3] In conclusion, we hold that in this case, the directed verdicts were erroneously entered because the condition of the banana raised a basis for establishing the store's constructive knowledge. Whether the aging occurred before the banana fell or whether the aging occurred on the floor is an issue for the jury, as are the reasonable inferences from the failure to sweep the floors regularly.
Owens, 802 So.2d at 331-32.
The Court in Owens thus did three things: (1) it adopted for the first time for use in Florida the "burden-shifting" doctrine used in other states; (2) it adopted for the first time for use in "supermarket" cases in Florida the "mode of operation" doctrine; and (3) it reduced the plaintiff's burden relative to "constructive notice" of an unsafe condition in slip-and-fall cases in Florida.
Based on the evolving nature of supermarkets, discount stores, fast food restaurants, and similar retail establishments, the Court concluded that use of the above doctrines was necessary in order to keep the playing field level in slip-and-fall cases in Florida courts.[2] This rationale is inapplicable to nursing homes. Obviously, a nursing home is entirely different as a provider of managed care to its aging residents. Unlike supermarkets, there has not been a substantial history of difficulty in adjudicating liability in cases involving nursing homes. In point of fact, the majority opinion in Owens did not rely on a single slip-and-fall case from the health care field to support its holding. In light of the unique nature of the service performed by nursing homes and the critical role they play in caring for Florida's aging population, our courts should be reluctant to alter the rules of liability for such facilities based on a "supermarket" rationale.
I conclude that the majority is incorrect in its assertion on page 260 that "[t]he mode of operation theory is not a new principle of law and is not unique to a particular business. See Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721 (1948)." This Court's 1948 decision in Palm Beach Kennel Club has been considered to be applicable only to amusement parks, as stated by the First District *265 Court of Appeal in its 1998 decision in Rowe v. Winn-Dixie Stores, Inc., 714 So.2d 1180, 1181 (Fla. 1st DCA 1998).
The appellants instead argue that a jury question was presented as to whether the appellees were negligent in the manner in which they operated the seafood salad display, and rely upon the "negligent method of operation" theory of liability expounded in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720 (1948).
In Wells the Florida Supreme Court announced a special rule for slip and fall cases involving places of amusement where large crowds are invited to congregate. Imposing a higher duty of care upon the owners and operators of those establishments, the court indicated that such places of amusement have a continuous duty to look after the safety of their patrons, so that liability may be predicated on a negligent method of operation even without notice or knowledge of a dangerous condition. But the supreme court has declined to extend the special rule announced in Wells to slip and fall cases involving other business establishments, such as supermarkets. See Food Fair Stores v. Trusell, 131 So.2d 730 (Fla.1961); [Food Fair Stores v. Patty, 109 So.2d 5 (Fla.1959) ]; Carls Markets v. Meyer, 69 So.2d 789 (Fla.1953).
(Footnote omitted.) The reasoning of cases involving amusement parks should not be applied to health care facilities.
In sum, to the extent the present majority opinion holds that the Owens "mode of operation" doctrine is applicable to slip-and-fall accidents in the health care field, I disagree. This doctrine was extended to supermarkets and other retail establishments in Owens only because of reasons specific to that particular field. Second, to the extent the majority opinion holds that the three employees at the nursing station may have been negligent in failing to detect the transitory object on the floor, again I disagree. The following facts are uncontroverted: (1) the floor had been cleaned minutes earlier; (2) the transitory object had just been dropped by a resident leaving the dining hall; (3) the three employees had traversed the area where the accident occurred and did not see the object; (4) the offending object was a solitary grape, which easily could have been overlooked even by vigilant staff members; and (4) there had been no prior slips on food products at the nursing home. I would continue to apply traditional rules of tort liability in such cases.
I would approve the decisions of both the trial and district courts below.
HARDING, Senior Justice, concurs.
NOTES
[1] Chapter 2002-285, section 1, Laws of Florida, effective May 30, 2002, creates section 768.0710, which relates to actions involving transitory substances and specifically acknowledges the mode of operation theory of negligence as one theory of establishing negligence: whether the "person or entity in possession or control of the business premises acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises." Ch.2002-285, § 1, Laws of Fla. (to be codified at § 768.0710(2)(b), Fla. Stat. (2002)) (emphasis supplied).
[2] The Court in Owens noted the following:

As the Supreme Court of Washington has explained: "The predominant theme running through these cases appears to be that modern techniques of merchandising necessitate some modification of the traditional rules of liability." First, the evolution of modern merchandising marketing techniques, including self-service, have increased the likelihood of spills and breaks occurring. Second, a store adopting the self-service technique should reasonably anticipate certain types of accidents and therefore is already on notice as to those accidents. Third, because the self-service technique allows for lower overhead and greater profits, the businesses that adopt the self-service technique are in better position to prevent and attend to the risks involved. Fourth, it is unfair to place the burden on the customer to establish actual or constructive notice of the condition on the part of the premises owner or operator when the defendant is in control of its own premises and the evidence on which notice is based.
Owens, 802 So.2d at 325 (citation and footnotes omitted).