# Third District Court of Appeal

## State of Florida

Opinion filed June 27, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1508
Lower Tribunal No. 14-10561
_____

**Vernal Khorran,**
Appellant,

vs.

**Harbor Freight Tools USA, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Eric William Hendon, Judge.

Billera Law (Boca Raton); The Powell Law Firm, P.A., and Brett C. Powell, for appellant.

Kubicki Draper, and G. William Bissett, Jr. and Caryn L. Bellus, for appellee.

Before EMAS, SCALES and LUCK, JJ.

SCALES, J.

In this personal injury action, Vernal Khorran, the plaintiff below, appeals a final summary judgment entered against him. We reverse because genuine issues

of material fact exist as to whether Harbor Freight Tools USA, Inc., the defendant below, either (i) had actual or constructive knowledge of a dangerous condition on its premises that injured Khorran; or (ii) created a dangerous condition on its premises through its mode of operation in stacking the item that allegedly injured Khorran.

## I.  FACTS

On June 23, 2010, Khorran was shopping at a Harbor Freight store in Miami. According to Khorran, while he was perusing the shelves in a store aisle, a large metal object fell off an upper aisle shelf and struck Khorran from behind, injuring his knee.  Apparently, Khorran was facing a wall of shelves when an item on one of the shelves behind him fell and somehow struck him.

Khorran filed a two-count, second amended complaint against Harbor Freight alleging negligence (Count I) and negligent mode of operation (Count II). Both of these claims were based, in part, on allegations that large and heavy equipment – such as the object that hit him – were displayed in an unsafe manner over areas that Harbor Freight's invitees traverse.

Khorran testified at his deposition that he did not see the object on the aisle shelf before the incident.  Nor did Khorran see the object on the ground after it hit him.  Khorran testified, however, that he saw the object in his peripheral vision as it was falling.  Khorran also testified that while he was being attended to after the

2

incident, a store employee showed Khorran a metal trailer hitch and identified the hitch as the object that had struck him. Though Harbor Freight asserts that its store policy is to display such heavy objects only on lower shelves, Khorran testified that, immediately after the incident, he saw trailer hitches being stored on the top shelf in question at a height of at least eight or nine feet from the ground.

Harbor Freight filed a motion for summary judgment, claiming there was no evidence that Harbor Freight had any actual or constructive knowledge or notice of the alleged dangerous condition prior to the incident. In its motion, Harbor Freight argued that "[e]ven assuming that it was a trailer hitch that fell on [Khorran] and that it had been dangerously stacked, [Khorran] . . . adduced no evidence as to where the trailer hitch was located at the time of the incident, that Harbor Freight created the dangerous condition, or that Harbor Freight had actual or constructive notice of it." In support of its summary judgment motion, Harbor Freight also produced an expert affidavit, which opined that Khorran's version of events was a "physical impossibility."

In response, Khorran filed his own expert affidavit, which opined that Khorran's version of events was "reasonable." In his response, Khorran also argued that he was entitled to a *res ipsa loquitur* inference and, therefore, that any actual or constructive notice of a dangerous condition is irrelevant. While the transcript from the summary judgment hearing reflects that the trial court rejected

3

Harbor Freight's "impossibility" claim, the trial court, nevertheless, entered summary judgment for Harbor Freight, concluding that the record evidence was devoid of any genuine issue of material fact. Khorran timely appealed the trial court's summary judgment for Harbor Freight.

## II.  ANALYSIS[1]

Khorran asserts two distinct, albeit similar, negligence claims against Harbor Freight. Khorran's negligence claim (Count I) is premised upon there being a dangerous condition at the Harbor Freight store and requires proof that Harbor Freight either knew or should have known of the alleged dangerous condition. In the alternative, Khorran's "negligent mode of operation" claim (Count II) is premised upon Harbor Freight's alleged conduct in creating the dangerous condition, thus obviating the knowledge element inherent in the negligence claim. We discuss each claim below, and why the record evidence precludes summary judgment on either claim.

### A. Khorran's Negligence Claim

A property owner owes an invitee a "duty to use reasonable care in maintaining the property in a reasonably safe condition." Grimes v. Family Dollar Stores of Fla., Inc., 194 So. 3d 424, 427 (Fla. 3d DCA 2016). Where an invitee has been injured by a dangerous condition on a business premises and seeks to

---

[1] We review a trial court summary judgment *de novo*. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

4

recover damages from the premises owner, the invitee ordinarily must establish that the premises owner had either actual or constructive knowledge or notice of the dangerous condition. Id. Constructive knowledge may be inferred if the dangerous condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it. Id. at 427-28.

In his deposition, Khorran testified that: (i) two Harbor Freight employees were stacking the shelves behind him, in the same aisle where Khorran was standing; (ii) Khorran saw the object that hit him fall from above and behind his head; (iii) one of the Harbor Freight employees who had been stacking the shelves behind Khorran identified a trailer hitch as the object that had struck him; (iv) immediately following the incident, Khorran looked up from where he was seated and saw multiple, similar trailer hitches stored on the top shelf, directly behind where he had been standing; and (v) the top shelf was at least eight or nine feet high, requiring the use of a ladder to reach it.

Viewing this evidence in a light most favorable to Khorran, reasonable inferences can be made that the trailer hitch that hit Khorran was dangerously stacked on the top shelf behind where Khorran was standing, and that the Harbor Freight employees who then were stocking the shelves somehow caused the trailer hitch to fall. That the top shelf was not reachable without the assistance of a ladder

and that multiple trailer hitches were displayed there support a reasonable inference that a Harbor Freight employee either created the dangerous condition by placing the trailer hitches there – as opposed to a random customer re-shelving a lone, unwanted item in the wrong place – or that the dangerous condition existed for a sufficient period of time that a Harbor Freight employee should have known about it and taken steps to remedy it.

Contrary to the trial court's finding, there is record evidence sufficient to create a genuine issue of material fact precluding summary judgment for Harbor Freight on whether it had actual or constructive knowledge of the dangerous condition. Id. Hence, we reverse the trial court's summary judgment for Harbor Freight on Count I of Khorran's second amended complaint.

B. Khorran's Negligent Mode of Operation Claim

A claim for negligent mode of operation "recognizes the common-sense proposition of negligence law that the duty of care required under the circumstances may consist of taking reasonable precautions so as to minimize or eliminate the likelihood of a dangerous condition arising in the first instance." Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 260 (Fla. 2002). Under this negligence theory, the focus is on the manner in which the premises owner operates, rather than on the particular events surrounding the plaintiff's accident. Id. at 261. If the premises owner operates in a manner that creates a

6

dangerous or unsafe condition, the premises owner can be held liable. Id.

Importantly, under the mode of operation theory of negligence, "the requirement of

establishing constructive knowledge is altered or eliminated." Owens v. Publix

Supermarkets, Inc., 802 So. 2d 315, 323 (Fla. 2001).[2]

> As the Florida Supreme Court has explained:
>
> The duty of premises owners to maintain their premises in a safe condition is not exclusively limited to detecting dangerous conditions on the premises after they occur and then correcting them; the duty to exercise reasonable care may extend to taking actions to reduce, minimize, or eliminate foreseeable risks before they manifest themselves as particular dangerous conditions on the premises. Of course, the duty of care may vary with the circumstances. See, e.g., Wal–Mart Stores, Inc. v. Rogers, 714 So. 2d 577, 578 (Fla. 1st DCA 1998) (whether store was negligent in manner in which it hung radios from hook so as to create a dangerous condition was jury question); Ochlockonee Banks Rest., Inc. v. Colvin, 700 So. 2d 1229, 1230 (Fla. 1st DCA 1997) (where jury could have determined that the defendant's negligence consisted of allowing a dangerous condition to exist by allowing people to place their drinks on the railing immediately adjacent to the dance floor); Klaue v. Galencare, Inc., 696 So. 2d 933, 935 (Fla. 2d DCA 1997) ("[W]hether a business entity was negligent in stacking items on a shelf at a particular height, in a particular manner, and at a particular location thus causing a dangerous condition to exist is a jury question."); Harrell v. Beall's Dep't Store, Inc., 614 So. 2d 1142, 1143 (Fla. 2d DCA 1993) (whether a department store created a dangerous condition by the manner in which it mounted a display rack is a jury question).

Markowitz, 826 So. 2d at 259-60.

---

[2] We recognize that this no longer holds true in premises liability cases involving a slip and fall on a transitory foreign substance. See § 768.0755, Fla. Stat. (2010); Kenz v. Miami-Dade Cty., 116 So. 3d 461 (Fla. 3d DCA 2013). This is not such a case.

7

Here, a Harbor Freight employee testified in his deposition that when Harbor Freight receives a shipment of trailer hitches, an employee removes the trailer hitches from the boxes they are shipped in and then stacks them loosely on the store shelves.[3] Harbor Freight also introduced evidence that it has a policy of displaying, and does display, heavy metal objects on lower shelves (below eye level). Yet, in his deposition, Khorran testified that he saw several, metal trailer hitches stored on the top shelf, at a height of eight or nine feet (significantly higher than eye level).

"Under Florida law, . . . the question of whether a business entity was negligent in stacking items on a shelf at a particular height, in a particular manner, and at a particular location thus causing a dangerous condition to exist is a jury question." Klaue v. Galencare, Inc., 696 So. 2d 933, 935 (Fla. 2d DCA 1997); Valdes v. Faby Enters., Inc., 483 So. 2d 65, 65 (Fla. 3d DCA 1986) ("Whether Faby was negligent in stacking the cases of beer at the height and in the manner and location in which it did was a question for the jury."). Simply put, we cannot conclude, based on our *de novo* review of the summary judgment evidence, that Harbor Freight met its burden of establishing the absence of any genuine issue of material fact with regard to Khorran's negligent mode of operation claim. Hence,

---

[3] The employee confirmed that, because the trailer hitches are not in boxes at the time, the hitches can fall off the shelf during the stocking process and dent the floor.

8

we also reverse the trial court's summary judgment for Harbor Freight on Count II of Khorran's second amended complaint.

### III. CONCLUSION

Because genuine issues of material fact exist as to both Khorran's negligence claim and his negligent mode of operation claim against Harbor Freight, we reverse the trial court's summary judgment and remand for proceedings consistent herewith.     Reversed and remanded with instructions.[4]

---

[4] Because we reverse the trial court summary judgment, we need not reach the issue of whether, under the particular facts of this case, Khorran is entitled to a *res ipsa loquitur* inference.