719 So.2d 312 (1998)
SIEMENS ENERGY & AUTOMATION, INC., and English Seel & Smith, Inc. f/k/a Jensen-english & Associates, Inc., Appellants/Cross-appellees,
v.
Phillip R. MEDINA, Appellee/Cross-appellant.
No. 97-1987.
District Court of Appeal of Florida, Third District.
August 5, 1998.
Rehearing Denied November 4, 1998.
*313 Kubicki Draper and Angela C. Flowers, Miami, for appellants/cross-appellees.
Fogel Rubin & Fogel, Terry L. Fogel and Scott L. Rubin, Miami, for appellee/crossappellant.
Before SCHWARTZ, C.J., and GODERICH and SORONDO, JJ.
PER CURIAM.
The defendants, Siemens Energy & Automation, Inc. [Siemens] and English Seel & Smith f/k/a Jensen-English & Associates, Inc. [English], appeal from an adverse final judgment and from an adverse cost judgment. The plaintiff, Phillip R. Medina, also cross-appeals from the final judgment. We reverse.
Phillip Medina, a journeyman electrician, was severely injured while working for City Electric in Key West. Medina had climbed onto a piece of equipment called a threephase voltage regulator. A three-phase voltage regulator is a large piece of equipment designed to regulate the flow of electricity in a substation. The regulator is shaped like a rectangular box and measures 6.3 feet by 4.6 feet, and is 9-feet tall. The voltage regulator was not in line (energized) at the time of the accident.
Medina was trying to retrieve some tools or parts that had been left there the preceding day. While on top of the regulator, Medina came in contact with 13,800 volts of electricity. He was electrified and his body was found on top of some adjacent radiator coils. Medina suffered severe burns and other injuries.
Medina filed a two-count complaint against Siemens, the manufacturer of the voltage regulator, and against English, a Siemens' representative. Count I generally alleged that the defendants were negligent in designing, manufacturing, and testing the surface of the top of the regulator. Count II alleged that the defendants were strictly liable because the regulator was defective and unreasonably dangerous as a result of the conduct alleged in Count I.
Medina's theory of how the accident happened was presented through the testimony of an accident reconstruction expert. The accident reconstructionist opined that Medina probably slipped and fell on moisture or water that had accumulated in a depression on the top of the regulator. The expert further testified that when Medina fell, he probably threw his arms up in the air to try to regain his balance and his wrist or hand came in contact with an energized bus plate.
As proof of Siemens' negligence in designing, manufacturing and testing the surface of the top of the voltage regulator, Medina presented *314 the testimony of an expert safety analyst. The safety analyst opined that by designing and manufacturing the surface of the top of the regulator without non-skid paint and by failing to perform safety tests on the surface material, Siemens did not act as a reasonably prudent manufacturer. The safety analyst further opined that, besides having a duty to provide an adequate nonskid surface on the top of the regulator, Siemens, as a reasonably prudent manufacturer, also had a duty to warn Medina of the foreseeable danger of standing on top of the regulator and falling off.
In order to advance its case against English, Medina presented the testimony of the City Electric representative who was involved in purchasing the voltage regulator. He stated that he received documents regarding the regulator through English, including the printed specifications, and that English had acted as a conduit for information. He also testified that the regulator was purchased directly from Siemens, that the contract for the purchase of the regulator was executed by City Electric and Siemens, and that Siemens had the regulator shipped directly from its factory to City Electric.
At the close of the evidence, Medina moved to amend his pleadings to conform to the evidence presented by the safety analyst and to assert as an additional act of negligence Siemens' failure to warn Medina of the danger of standing on top of the regulator and the possibility of falling off, a danger that Medina argued was not readily apparent to him. Siemens objected to the amendment arguing that manufacturers have no duty to warn users of a product of obvious dangers and that the danger of getting on top of the regulator and falling off was obvious. Nevertheless, the trial court allowed the amendment.
The defendants renewed their prior motions for directed verdict. Specifically, English argued that although there was testimony that someone at English may have crossed out one of the specifications relating to price, there was no evidence presented that showed a causal connection between that change in specification and the alleged design defect in the regulator. The court reserved ruling on English's motion, but denied Siemens' motion.
The jury was charged and retired to deliberate. Thereafter, the jury returned the following verdict:
1. Was there negligence on the part of Siemens Energy & Automation, Inc. which was a legal cause of loss, injury or damage to Phillip R. Medina?
 YES X NO ____
2. Was there negligence on the part of English, Seel & Smith, Inc. which was a legal cause of loss, injury or damage to Phillip R. Medina?
 YES ____ NO X 
3. Did Siemens Energy & Automation, Inc. manufacture a defective product which was unreasonably dangerous and which was a legal cause of loss, injury or damage to Phillip R. Medina?
 YES ____ NO X 
4. Did English, Seel & Smith, Inc. sell or distribute a defective product which was unreasonably dangerous and which was a legal cause of loss, injury or damage to Phillip R. Medina?
 YES X NO ____
The jury apportioned liability as follows: Siemens 36.5%, English 3.6%, Medina 36.5%, and City Electric 23.4%, and awarded damages. Final judgment was entered on the verdict, and a cost judgment was entered for Medina as the prevailing party. The defendants appeal, and the plaintiff cross-appeals.
Siemens contends that the trial court erred by denying its motion for directed verdict on the issue of negligence based on a failure to warn of the danger of standing on top of the regulator and falling off. We agree.
"A duty to warn arises where a product is inherently dangerous or has dangerous propensities.... However, there is no duty to warn of an obvious danger." Cohen v. General Motors Corp., Cadillac Div., 427 So.2d 389, 390-91 (Fla. 4th DCA 1983); Thursby v. Reynolds Metals Co., 466 So.2d 245, 251 (Fla. 1st DCA 1984), review denied, 476 So.2d 676 (Fla.1985); Clark v. Boeing Co., 395 So.2d 1226, 1228-29 (Fla. 3d DCA *315 1981). In the instant case, there was no duty to warn the plaintiff of the obvious danger of standing on the top of a 9-foot high piece of equipment that was not designed to be used as a work platform and of the possibility of falling off. Therefore, the trial court should have directed a verdict in favor of Siemens as a matter of law on the issue of negligence based on a failure to warn.
Because the jury found in its verdict that Siemens did not manufacture a defective product, this precluded any findings of strict liability or negligence based on a defective product and indicates that the jury's verdict against Siemens was solely based on a negligent failure to warn and since we have concluded that the trial court should have granted a directed verdict on the issue of negligent failure to warn, there is no other basis to sustain the verdict against Siemens. The judgment against Siemens must be reversed.
Next, English contends that the trial court erred by denying its motion for directed verdict on the issue of strict liability based on an alleged product defect. We agree.
"In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of a proximate causal connection between such condition and the user's injuries or damage." West v. Caterpillar Tractor Co., 336 So.2d 80, 87 (Fla. 1976); Clark v. Boeing Co., 395 So.2d 1226, 1229 (Fla. 3d DCA 1981). "Florida courts have expanded the doctrine of strict liability to others in the distributive chain including retailers, wholesalers, and distributors." Samuel Friedland Family Enters. v. Amoroso, 630 So.2d 1067, 1068 (Fla.1994).
In the instant case, viewing the facts in the light most favorable to the plaintiff, it is clear that English was not a part of the distributive chain. English acted as neither a distributor nor a retailer. At most, English was a broker serving solely as a conduit of information between Siemens and City Electric. The contract for the purchase of the regulator was between Siemens and City Electric, and the regulator was delivered directly from Siemens' factory to City Electric. Further, the plaintiff failed to present any evidence that English's involvement in changing one aspect of the product's specifications relating to price had any causal relationship with the alleged defect. Halpryn v. Highland Ins. Co., 426 So.2d 1050 (Fla. 3d DCA 1983). English was also entitled to a directed verdict, and the judgment against English must also be reversed.
Because these issues are dispositive, we do not need to reach the other issues raised in the appeal and cross-appeal.
The final judgment finding liability against Siemens and English is reversed.