788 So.2d 393 (2001)
Francis R. PROTO, Appellant/Cross-Appellee,
v.
Richard S. GRAHAM, et al., Appellees/Cross-Appellants.
No. 5D00-1464.
District Court of Appeal of Florida, Fifth District.
June 29, 2001.
Ronnie H. Walker of Ronnie H. Walker, P.A., Orlando, for Appellant/Cross-Appellee.
Jennifer S. Carroll and Diane F. Medley, of Law Offices of Jennifer S. Carroll, P.A., West Palm Beach, and James W. Smith, of Smith & Schoder, L.L.P., Daytona Beach, for Appellee/Cross-Appellants.
PER CURIAM.
This is an appeal from the denial of a motion for a directed verdict in a legal malpractice action. Richard Graham and his law firm claim that the trial court erred, as a matter of law, by denying their motion for a directed verdict as to negligence. We agree and reverse.
In September of 1989, Dr. Francis Proto, a dentist from Connecticut, invested $80,000 in a double-wide, mobile home in Nature's Woods, a development in DeLand, *394 Florida. Century Federal loaned Dr. Proto the money to buy the mobile home. Dr. Proto then agreed to lease the unit with the lease payments being applied to the mortgage. Pathfinder Services, Inc., was the agent and sales manager hired to manage the property, receive the rental payments and then make the mortgage payments directly to Century Federal. Although Century Federal had no direct connection to Nature's Woods, it had a written agreement with Americom, a mortgage broker, to generate mobile home credit transactions for Century Federal. Americom also prepared all the closing documents and handled the closing.
At the closing, Dr. Proto was told to make out his down payment check for 20% of the purchase price. That check was photocopied and then torn up and given back to Proto. He was then told to make another check for 5%. Thus, Dr. Proto knowingly participated in a scheme to defraud Century. Dr. Proto was informed at closing that his double-wide had not been finished, but he closed regardless and acknowledged to Century that one had been delivered.
After Pathfinder made several mortgage payments, it became apparent that Pathfinder and Americom had been defrauding both lenders and buyers and the whole project was in jeopardy. As it turned out, at least one of the lenders was in collusion with the Nature's Woods developer, Abb-Hitt. Century Federal was not.
Dr. Proto contacted his Connecticut lawyer who referred him to Graham's law firm which was already representing several Nature's Woods investors. Those investors had decided to stop making mortgage payments. Most indicated a willingness to give up their down payments and any payments made in exchange for being relieved of their obligation. Graham gave them no reassurances but promised to work on it.
On August 15, 1990, Graham wrote letters to the banks involved in some 70 loans, informing them of his representation and asking that the banks forego any action toward acceleration, collection, or foreclosure. He told them that he had discovered serious irregularities, and that the clients would like to settle amicably. The investors, including Dr. Proto, authorized Graham to settle for an exchange of the mobile homes, any payments made, and assignments of any claims against the developers and others in return for releases from personal liability.
By mid-September 1990, Graham wrote to Dr. Proto's Connecticut attorney that he had contacted Century Federal and found that Proto's loan was the only one placed with that bank. Century Federal, which had a longstanding relationship with the loan broker Americom, seemed willing to withhold enforcement of the loan. Graham wrote that "[t]here is some risk involved in discontinuing payments," but that this seemed the best way to put pressure on the bank. Graham's office advised Proto not to make any more payments to Century Federal.
Of the 70 loans, 67 were resolved favorably to the clients. Only two banks, involved in three of the loans, resisted. Century Federal was one of those two banks.
In late November 1990, Century Federal filed a foreclosure action against Dr. Proto. Graham's firm was employed by Dr. Proto to defend and counterclaimed against Century Federal. They also brought fraud claims against Abb-Hitt and Pathfinders and brought Americom into the lawsuit. In joining Americom, Graham believed he could establish that Americom was an agent of Century Federal.
Graham's belief was strengthened when discovery revealed that Americom was either *395 in the same building or in the building next door to Century Federal. Business cards for Americom listed "Century Bank." A written agreement between Century Federal and Americom, entered into on August 10, 1989, about a month before the Proto closing, stated that Americom would generate credit transactions for Century Federal and would relieve the bank of "outside manpower requirements." The document did not state that Americom was an independent contractor, which later turned out to be the case.
Century and Abb-Hitt moved for a summary judgment. To the surprise of Graham, the motion was granted and a foreclosure judgment in favor of Century was entered for $83,334.83 in principal and interest, together with $28,907.30 in fees and costs. Graham was authorized to appeal, and this court affirmed the summary judgment as to Century, but reversed the judgment in favor of Abb-Hitt. Proto v. Century Federal Savings Bank, 629 So.2d 921 (Fla. 5th DCA 1993). A final judgment was thereafter entered in favor of Century which added appellate fees and costs of $15,306.
Dr. Proto then sued Graham and his law firm seeking recovery of the final judgment against him. A jury returned a verdict of $122,446.47. The trial court granted a remittitur as to that portion of the jury verdict which included mortgage principal, interest and penalties, and entered a final judgment of $32,179.28.[1]
Graham argues that the trial court should have directed a verdict in his favor when Dr. Proto failed to put forth reasonable evidence to support a legal malpractice claim. Specifically, Graham claims Dr. Proto failed to prove that any negligence resulted in or was the proximate cause of his loss.
Under Florida law, three basic elements are required to be proven in a legal malpractice action: (1) employment of the attorney; (2) attorney's neglect of a reasonable duty; and (3) proximate cause.
Good faith tactical decisions are not actionable in Florida. Crosby v. Jones, 705 So.2d 1356 (Fla.1998). As stated by the court:
Florida has long held that an attorney may be held liable for damages incurred by a client based on the attorney's failure to act with a reasonable degree of care, skill and dispatch. Weekley v. Knight, 116 Fla. 721, 156 So. 625 (1934); Riccio v. Stein, 559 So.2d 1207 (Fla. 3d DCA 1990). This does not mean, however, that an attorney acts as an insurer of the outcome of a case. Good faith tactical decisions or decisions made on a fairly debatable point of law are generally not actionable under the rule of judgmental immunity.
In Kaufman v. Stephen Cahen, P.A., 507 So.2d 1152 (Fla. 3d DCA 1987), the court stated:
An attorney who acts in good faith and in honest belief that his advice and acts are well-founded and in the best interest of his client is not answerable for a mere error in judgment or for a mistake in a point of law which has not been settled by the court of last resort in his state and on which reasonable doubt may be entertained by well-informed lawyers. Hodges v. Carter, 239 N.C. 517, 80 S.E.2d 144, 146 (1954).
In the present case, Dr. Proto failed to prove two of the three elements: *396 that Graham neglected any reasonable duty, or that Dr. Proto's damages were caused by Graham. In short, a view of all the evidence, including the testimony of Dr. Proto's expert, reveals that Proto failed to make a prima facie case of legal malpractice. See Great Southern Peterbilt, Inc. v. Geiger, 616 So.2d 1127, 1128 (Fla. 1st DCA 1993).
In Florida, all negligence actions "follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury." Gooding v. University Hosp. Building, Inc., 445 So.2d 1015, 1018 (Fla. 1984). Causation is an essential element of negligence, of which the plaintiff has the burden of proof and plaintiff
must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

Id. (quoting PROSSER, LAW OF TORTS § 41 (4th ed.1971) (emphasis supplied)).
The expert testimony of Proto's only expert, Stephen Bozarth, should have been rejected by the trial court in considering the motion for a directed verdict. His opinion was based on sheer speculation and facts or inferences not supported by the evidence.
Attorney Bozarth testified that although he was not critical of Graham's original advice to Proto not to make payments on the mortgage, the advice should have changed once Graham's office had had an opportunity to investigate the facts. Bozarth opined that a reasonable, prudent lawyer would have concluded that Century Federal's position was meritorious and that Proto had no chance to win against the lending institution. According to Bozarth, it was below the proper standard of care for Graham not to have negotiated a deal with Century Federal in June 1991 even if it meant conceding to all demands made by the lender. Bozarth concluded that the allegedly bad legal advice was the cause of the summary judgment and the judgments for costs and attorney's fees.
A careful review of the record reveals that, as a matter of law, the evidence presented at trial cannot support the jury finding of negligence. There is no competent substantial evidence that Graham neglected any reasonable duty, or that any alleged negligence "probably rather than possibly" caused Dr. Proto's alleged damages. Instead, there is merely speculation and conjecture, unsupported by the evidence, that bad legal advice was the cause of the summary final judgment of foreclosure.
We therefore reverse and remand for entry of a judgment in favor of Graham and his law firm.
REVERSED; REMANDED.
HARRIS, PLEUS and PALMER, JJ., concur.
NOTES
[1] It is impossible to tell from the record how either the jury verdict or the amount of the final judgment was calculated.