914 So.2d 1102 (2005)
Michelle RIVERA, and Toys "R" UsDelaware, Inc., Appellants,
v.
BABY TREND, INC., Appellee.
No. 4D04-3284.
District Court of Appeal of Florida, Fourth District.
November 30, 2005.
*1103 Alan D. Sackrin of Law Office of Alan D. Sackrin, Hallandale Beach, for appellant Michelle Rivera.
Paul H. Field of Parenti, Falk, Waas, Hernandez & Cortina, P.A., Coral Gables, for appellant Toys "R" Us  Delaware, Inc.
Esther E. Galicia of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Fort Lauderdale, for appellee.
SHAHOOD, J.
Appellant, Michelle Rivera, filed a products liability action seeking damages for injuries resulting from an allegedly defective baby stroller. Defendants in the action are Baby Trend, Inc., the distributor and marketer of the stroller, and Toys "R" Us, the purchaser and retailer of the stroller. The stroller was manufactured by a corporation in China, which is not a party to the action.
The trial court granted summary judgment in favor of Baby Trend on the basis that Baby Trend could not be strictly liable because it never took possession of the stroller at any point in the chain of distribution. The trial judge felt he was bound by the standard jury instruction on products liability, which states, in pertinent part, the following:
The issues for your determination ... are whether the [product] ... was defective when it left the possession of [the defendant] and, if so, whether such defect was a legal cause of [the loss or injury] sustained by [the plaintiff].
Fla. Std. Jury Instr. (Civ.) Product Liability.
An explanatory note following the instruction indicates that the charge was "derived from § 402A as adopted in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla.1976)...." See Standard Jury Instructions-Civil Cases, 872 So.2d 893, 896 (Fla.2004). The rule stated in the Restatement (Second) of Torts § 402A is the following:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and

*1104 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
Comment "(g)" explains:
g. Defective condition. The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.... The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff....
Based on the language, "leaves the seller's hands," Baby Trend argues that possession is an essential prerequisite to the imposition of strict liability for defective design. There is no authority addressing that specific issue. We hold that, while possession may be a consideration, it is not a prerequisite to a strict liability action such that the lack of proof of possession would preclude the action. Indeed, other factors which might suggest control over the allegedly defective product also affect the viability of a strict liability claim.
In addition to possession, a court must also look at the relationship of the manufacturer, as well as others in the distribution chain, including retailers, wholesalers, distributors and lessors, to the product in determining whether to impose strict liability. See, e.g., West, 336 So.2d at 87; see also Samuel Friedland Family Enters. v. Amoroso, 630 So.2d 1067, 1068 (Fla.1994) (expanding the potential exposure to a claim for strict liability in tort to others in the distribution chain in addition to the manufacturers); Am. Aerial Lift, Inc. v. Perez, 629 So.2d 169, 170-71 (Fla. 3d DCA 1993) (holding that a commercial lessor of heavy equipment was strictly liable under section 402A, Restatement Second of Torts, where the alleged defect existed at the commencement of the lease). For example, relevant queries are whether the person or entity placed the product in the stream of commerce, is in a position to "control the risk of harm a product might cause once put into the stream of commerce," or either created or assumed the risk of harm for the defective product. See generally Geboy v. TRL Inc., 159 F.3d 993, 997-98 (7th Cir.1998).
In Siemens Energy & Automation, Inc. v. Medina, 719 So.2d 312, 315 (Fla. 3d DCA 1998), a man who was electrocuted while standing on top of a voltage regulator filed a products liability suit against the manufacturer of the regulator as well as the broker who arranged the sale from the manufacturer to the purchaser. On review of the trial court's denial of the broker's motion for directed verdict, the appellate court held that the motion should have been granted because the broker was not part of the distributive chain. Id. at 315. Because it was undisputed that the broker in Siemens did nothing more than forward information to the purchaser, the court concluded that he was neither a distributor nor a retailer and, at most, served only as a conduit of information. Id. There was no evidence "that [the broker]'s involvement in changing one aspect of the product's specifications relating to price had any causal relationship with the alleged defect"; therefore, the appellate court held that he was not liable for the injuries. Id.
Likewise, Baby Trend contends that, as in Siemens, Baby Trend was merely a broker and not part of the distributive chain. The evidence, however, belies that argument and distinguishes this case from Siemens. Even though Baby Trend never had actual possession of the stroller during shipment, Baby Trend was the actual seller of the product, marketed the product under the Baby Trend name, and accepted *1105 payment for the product. Moreover, there was evidence suggesting that Baby Trend had some control over the design of the product to ensure compliance with safety regulations and had, at least once, in response to an unrelated complaint, taken steps to make the product safer. On these facts, Baby Trend's role in this transaction was more than merely a "conduit of information." The fact that Baby Trend never possessed the product during its journey through the distribution chain should not preclude a strict liability claim against Baby Trend when the company clearly was responsible for placing the product in the stream of commerce and had the ability to control the design of the product.
Thus, we reverse the summary judgment in favor of Baby Trend and remand for further proceedings.
Reversed and Remanded.
STEVENSON, C.J., and POLEN, J., concur.