JOHN MORRELL & CO., Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD., Defendant.

Case No. 06–60786–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 8, 2008.

Jennifer Elaine Simpson, Scott John Topolski, Buckingham, Doolittle & Burroughs, LLP, Boca Raton, FL, for Plaintiff.

Jeffrey Eric Foreman, Darren Wayne Friedman, Kristen Alexandra Rosenthal, Maltzman Foreman PA, Miami, FL, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court for a hearing on November 15, 2007, upon Defendant, Royal Caribbean Cruises, Ltd.'s ("Royal Caribbean[']s") Motion for Final Summary Judgment ("Motion") [D.E. 77]. Royal Caribbean moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on both counts against it in Plaintiff, John Morrell & Co.'s ("Morrell[']s") Complaint ("*Compl.*") [D.E. 1]. The Court has carefully considered the parties' written submissions, the record, the oral arguments, and applicable law.

## I. BACKGROUND

Defendant, Royal Caribbean, is a cruise ship operator with its headquarters in Miami, Florida. Plaintiff, Morrell, is the employer of Jane Weiler ("Weiler"). (*See Compl.* at ¶ 11). On June 2, 2005, Weiler and eleven other Morrell employees from around the United States began a company-sponsored cruise on the Empress of the Seas (the "Empress"), one of Royal Caribbean's cruise ships. (*See Affidavit of David Charles Hines ("Hines Aff.")*) [D.E. 102–2] at ¶¶ 3, 6–8). On June 4, 2005, the Empress arrived in Cozumel, Mexico, where the passengers were offered the opportunity to take part in a "Dune Buggy Beach and Snorkel" shore excursion (the "Shore Excursion"). (*See id.* at ¶¶ 7–8; *Shore Excursion Brochure ("Excursion Brochure")*) [D.E. 77–7] at 7).

The Excursion Brochure distributed by Royal Caribbean described the Shore Excursion as follows:

Drive a modern dune buggy, snorkel crystal waters and relax on an amazing beach. Then end your tour by shopping at the best place in town. This "Combo" package begins at the pier where your bilingual guide meets you for an exploration of Cozumel. The experience begins with traveling around the island in a customized dune buggy, visiting Cozumel's most beautiful and rugged areas.

(*Excursion Brochure* at 7). The Excursion Brochure also contained a disclaimer:

> Shore excursions are offered for sale by Royal Caribbean International as a convenience to our guests. While great care has been taken to offer the finest excursions available at each port, these tour services are provided by independent tour operators, and Royal Caribbean International will not be responsible or liable for any loss, damage, injury, costs, or delays resulting from, or in connection with, your use of these services.

(*Id.* at 3).

Passengers wishing to purchase tickets for the Shore Excursion were able to do so through Royal Caribbean. (*See Affidavit of Patrick Schneider* ("*Schneider Aff.*") [D.E. 119–3] at ¶¶ 5–6). Each shore excursion ticket issued by Royal Caribbean also contained a disclaimer:

> The arrangements set forth on this ticket for transportation, excursions, ground tours, restaurants or similar activities of services are made solely for the convenience of the ticket holder and are at the ticket holder's risk.... The providers of such services are independent contractors and are not acting as agents or representatives of Royal Caribbean Cruises, Ltd. ... In no event shall [Royal Caribbean] be liable for any accident or harm to ticket holders, which occurs as a result of any acts, omissions or negligence of any independent contractors.

(*Schneider Aff.* at ¶ 7; *Shore Excursion Ticket* [D.E. 77–9] ). Beyond the quoted disclaimers, Royal Caribbean did not give the passengers on the Empress any additional warnings regarding the Shore Excursion. (*See Hines Aff.* at ¶ 10).

Pelicanos Tours, S.A. ("Pelicanos") is a company located in Cozumel, Mexico, that owned and operated the Shore Excursion. (*See Schneider Aff.* at ¶ 13). Royal Caribbean had an oral agreement with Pelicanos to provide the Shore Excursion and promoted it onboard the Empress. (*See id.* at ¶ 15). Royal Caribbean did not provide any of the facilities for the Shore Excursion, and did not own, lease, or maintain any of the dune buggies or equipment used. (*See id.* at ¶¶ 13–15).

Weiler was one of the passengers who purchased a ticket for the Shore Excursion. (*See Hines Aff.* at ¶ 9). The participants on the Shore Excursion, including Weiler, were taken from the Empress by shuttle vessel to the dock at Cozumel. (*See id.* at ¶ 9). Once they arrived at the dock, the passengers walked to Pelicanos' dune buggy rental business which was located approximately one-sixth of a mile inland. (*See id.* at ¶ 7). None of the Empress' crew accompanied the participants to Pelicanos' rental business. (*See id.* at ¶ 15). Royal Caribbean did not have any role in hiring any of Pelicanos' employees. (*See Schneider Aff.* at ¶ 16). Additionally, none of Pelicanos' employees wore Royal Caribbean uniforms or identified themselves as employees of Royal Caribbean. (*See id.* at ¶ 17).

The Shore Excursion was scheduled for approximately half a day and was intended

to cover approximately 20 to 25 miles of driving round trip. (*See Hines Aff.* at ¶ 14). Weiler rode in one of the dune buggies driven by another Morrell employee. (*See Deposition of Wayne A. Ure* ("*Ure Dep.*") [D.E. 102–4] at 56:20–57:4). Approximately halfway through the Shore Excursion, the dune buggy in which Weiler was riding was involved in an accident involving a moped owned by another Cozumel company called JB Rentals, and driven by an individual named Tania Lynn Twito ("Twito"). (*See Compl.* at ¶ 15). Twito's moped struck the dune buggy in front of the one in which Weiler was riding, causing Weiler's dune buggy to swerve and roll over. (*See id.*). As a result of the accident, Weiler suffered serious physical injuries which rendered her unable to return to her previous job in sales and marketing at Morrell. (*See Ure Dep.* at 28:22–29:4).

Weiler subsequently filed a worker's compensation claim for her injuries in Ohio, where she lives. (*See Compl.* at ¶ 17). Morrell is self-insured for worker's compensation in Ohio. (*See id.* at 16). Consequently, Morrell has paid approximately $150,000 in medical bills with respect to Weiler's injuries, and an additional $20,000 in temporary disability benefits. (*See id.* at ¶¶ 18–19).

Morrell filed this action on June 2, 2006, asserting claims for subrogation and/or reimbursement from Royal Caribbean pursuant to Ohio Revised Code Section 4123.93 *et seq.*, to recover all money paid to Weiler with regard to her worker's compensation

claim. Morrell's Complaint alleges two causes of action against Royal Caribbean.[1] Morrell's first claim against Royal Caribbean, for negligence, is that Pelicanos, "as an agent of Royal Caribbean, negligently operated the subject dune buggy excursion, resulting in the accident." (*Id.* at ¶ 25). Morrell's second claim against Royal Caribbean, for negligent supervision, is that Royal Caribbean had "a duty to supervise the activities of Pelicanos to ensure that Pelicanos owned and/or operated the dune buggy excursion with reasonable or due care" (*id.* at ¶ 34), but "failed to properly supervise Pelicanos' actions...." (*Id.* at ¶ 35). Royal Caribbean now moves for summary judgment on the grounds that: (1) it is not liable for the alleged negligence of Pelicanos, an independent contractor;[2] and (2) Morrell cannot satisfy its burden of establishing a prima facie case of negligence or negligent supervision.

## II. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997),

1. Count II of Morrell's Complaint alleges negligence against JB Rentals and Twito, who are no longer parties to this action.

2. The undersigned does not address Royal Caribbean's contention that it is not liable for any negligence on the part of Pelicanos, an

independent contractor, because of the exculpatory clause in the Excursion Ticket, as well as similar disclaimers in promotional materials provided by Royal Caribbean, resolving the Motion, instead, on the second argument.

and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record ... mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir.2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affi-

davits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

### III. ANALYSIS

#### A. Applicable Law

As an initial matter, the parties disagree as to the law applicable to Morrell's claims. Royal Caribbean asserts that maritime law should apply, citing case law in this Circuit applying maritime law to tort claims that arose during a cruise, even where the alleged tort took place on land or during a "shore excursion." *See, e.g., Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir.2004) (applying maritime law to sexual battery claim of cruise ship passenger committed by crew member at port of call); *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D.Fla.2006) (applying maritime law to tort claim arising during "inner tube" shore excursion). Morrell attempts to distinguish the instant case from those decisions and asserts that Florida law should apply to its claims against Royal Caribbean.[3]

---

3. Morrell concedes, however, that maritime law, may, but need not, apply with respect to the interpretation of the disclaimers in Weiler's Shore Excursion Ticket. (*See Morrell's*

*Mem. of Law in Opp. to Defendant's Mot. for Final Summary Judgment* ("*Morrell Opp.*") [D.E. 105] at 9).

It is undisputed that the Shore Excursion was a scheduled event offered as part of the Empress cruise, and Morrell has not cited any case law applying state substantive law to tort claims arising from a cruise ship shore excursion. The undersigned agreed maritime law governed a shore excursion in *Pownall v. Cunard Line Limited Co.*, Case No. 06–22836–Civ–Altonaga [D.E. 120] at 15. Moreover, at least one state court, and a number of federal courts outside this Circuit, have applied general maritime law under analogous circumstances. *See, e.g., Carlisle v. Ulysses*, 475 So.2d 248, 250 (Fla. 3d DCA 1985) (applying maritime law to negligence claim arising from events that occurred on a beach after the passengers rented jeeps); *Bennion v. Clipper Cruise Line*, 1996 WL 218649, at *2 (9th Cir. Apr. 30, 1996) (applying maritime law to injuries suffered during shore excursion); *Andia v. Full Service Travel*, 2007 WL 4258634, at *6 (S.D.Cal.2007) (applying maritime law to claim that cruise ship passenger was injured during shore excursion to lava field).

 But greater discussion on the choice of law matter is unnecessary to resolve the present Motion. For present purposes, and to limit the reviewable issues, the Court will apply Florida substantive law, as urged by Morrell.[4] Under Florida law, "[t]o prevail in a negligence action, the plaintiff must show: (1) that the defendant owed a duty of reasonable care to the plaintiff; (2) that the defendant breached that duty; (3) that the breach was the proximate cause of the injury to the plaintiff; and (4) that the plaintiff suffered damages." *Hasenfus v. Secord*, 962 F.2d 1556, 1559–60 (11th Cir.1992) (citing *Rupp v. Bryant*, 417 So.2d 658, 668 n. 27 & accompanying text (Fla.1982)). Similarly, to prevail on a theory of negligent supervision, Morrell "must prove the basic elements of negligence," including: (1) the existence of a duty on the part of the defendant to protect the plaintiff from the injury or damage of which he complains; (2) failure of the defendant to perform that duty; and (3) injury or damage to the plaintiff proximately caused by such failure. *Roberson v. Duval County Sch. Bd.*, 618 So.2d 360, 362 (Fla. 1st DCA 1993).

### B. Negligence Claims

Both of Morrell's negligence claims against Royal Caribbean are premised on Morrell's alleged failure to warn Weiler that the dune buggy she would be riding during the Shore Excursion was dangerous and might be involved in an accident with another vehicle. (*See Morrell Opp.* at 35–40). As previously stated, to establish a prima facie case for negligence, Morrell must prove that Royal Caribbean owed a duty to warn Weiler of the inherent dangers of the Shore Excursion, and that

---

4. While there may be some distinctions, courts have observed that, "[t]he elements of a maritime negligence cause of action are essentially the same as the elements of common law negligence." *Burklow & Assocs., Inc. v. Belcher*, 719 So.2d 31, 35 (Fla. 1st DCA 1998) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959)). Nevertheless, the undersigned acknowledges that the duty of care owed by a common carrier to its passengers is specifically defined under maritime law and may not be wholly coextensive with the duty of care that may apply under state law. *See Doe*, 394 F.3d at 908 (observing that " '[i]t is a settled principle of maritime law that a shipowner owes a duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.' ") (quoting *Kermarec*, 358 U.S. at 630, 79 S.Ct. 406). Any such distinctions, however, do not have a material effect on the Court's evaluation of Morrell's claims.

Royal Caribbean breached that duty. *See Hasenfus*, 962 F.2d at 1559–60. Royal Caribbean asserts that Morrell cannot demonstrate Royal Caribbean had a duty to warn Weiler of the inherent dangers of riding in a dune buggy, nor that any failure to warn was the proximate cause of Weiler's injuries. The undersigned considers these arguments in turn.

### 1. Duty to Warn

Morrell asserts that Royal Caribbean "had and was possessed of a legally recognized duty to warn its dune buggy shore excursion participants of the dangers of operating a dune buggy that may not have been apparent or obvious to them." (*Morrell Opp.* at 37). Although Morrell does not explicitly state it, the danger that "may not have been apparent or obvious" appears to be the fact that a dune buggy is similar to an automobile and therefore may become involved in an accident with another vehicle in the course of its operation. (*See Morrell Opp.* at 37; *Affidavit of Wayne Ure* ("*Ure Aff.*") [D.E. 102–3] at ¶¶ 8–9 ("It is my understanding that a dune buggy is considered to be no different than an automobile ... [Royal Caribbean] should have warned the dune buggy excursion participants of the dangers and risks associated with operating a dune buggy.")).

▮▮▮ Under Florida law, there is no duty to warn someone of an obvious danger. *Rodriguez v. New Holland N. Am., Inc.*, 767 So.2d 543, 544–45 (Fla. 3d DCA 2000) (citations omitted).[5] "The obviousness of a danger and adequacy of a warning are determined by a 'reasonable

person' standard, rather than on each particular plaintiff's subjective appreciation of the danger." *Byrnes v. Honda Motor Co., Ltd.*, 887 F.Supp. 279, 281 (S.D.Fla.1994) (citing *Johns–Manville Sales Corp. v. Janssens*, 463 So.2d 242, 251 (Fla. 1st DCA 1984)). Individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed. *Gibbs v. Republic Tobacco, L.P.*, 119 F.Supp.2d 1288, 1293 (M.D.Fla.2000).

▮▮▮ The inherent dangers of operating a motor vehicle, such as a dune buggy (which Morrell concedes is substantially similar to an automobile), are commonly known and most people in the United States become familiar with them in their every day lives. Indeed, the fact that an individual riding in a dune buggy may become involved in an accident with another vehicle (or even a stationary object) is precisely the type of obvious danger which courts have recognized does not create a duty to warn. *Id.* at 281 (the fact that riding a motorcycle may result in a collision and injuries to the lower body held to be an obvious danger); *see also Rodriguez v. New Holland North America, Inc.*, 767 So.2d 543, 545 (Fla. 3d DCA 2000) (loader was inherently dangerous and danger of coming into contact with loader's boom was open and obvious; affirming partial summary judgment that defendants did not have duty to warn); *Martin v. JLG Indus., Inc.*, 2007 WL 2320593, at *4 (M.D.Fla. Aug. 10, 2007) (concluding that danger that someone could fall out of an open basket on a mechanical lift was open and obvious); *Siemens Energy & Automa-*

---

**5.** Notably, maritime law applies a similar standard. *Isbell*, 462 F.Supp.2d at 1237 ("[W]hile Defendant has a duty to warn the passengers of dangers, 'this obligation ex-

tends only to those dangers which are not apparent and obvious to the passenger.' ") (quoting *Luby v. Carnival Cruise Lines, Inc.*, 633 F.Supp. 40, 41 (S.D.Fla.1986)).

tion, Inc. v. Medina, 719 So.2d 312, 315 (Fla. 3d DCA 1998) (finding no duty to warn of the obvious danger of standing on top of a nine-foot high piece of equipment that was not designed to be used as a work platform and then falling off); *Cohen v. General Motors Corp., Cadillac Division,* 427 So.2d 389, 391 (Fla. 4th DCA 1983) (finding no duty to warn of the obvious result that manually releasing an emergency brake may cause a car to move); *Marzullo v. Crosman Corp.,* 289 F.Supp.2d 1337, 1346 (M.D.Fla.2003) (holding that the risk that one could suffer serious injury or death as a result of carelessly using a BB gun was obvious). Royal Caribbean, therefore, did not owe Weiler any duty to warn her about the obvious danger that the dune buggies utilized in the Shore Excursion might be involved in collisions with other vehicles driven carelessly by others.

■ Morrell nevertheless asserts that the Florida "dangerous instrumentality doctrine" imposed a specific duty on Royal Caribbean to warn Weiler of the possibility of an accident occurring while riding in the dune buggy. "Florida's dangerous instrumentality doctrine imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another." *Aurbach v. Gallina,* 753 So.2d 60, 62 (Fla.2000) (citing *Southern Cotton Oil Co. v. Anderson,* 80 Fla. 441, 86 So. 629, 637 (1920)). "The doctrine is not based on respondeat superior or agency, but on 'the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent.'" *Saullo v. Douglas,* 957 So.2d 80,

86 (Fla. 5th DCA 2007) (quoting *Meister v. Fisher,* 462 So.2d 1071, 1072 (Fla.1984)). As a result, the Florida Supreme Court has stated that, "in determining who is vicariously liability under the dangerous instrumentality doctrine, this Court repeatedly has required that the person held vicariously liable have *an identifiable property interest in the vehicle, such as ownership, bailment, rental, or lease of a vehicle." Id.* (emphasis added).

■ Morrell has neither alleged, nor offered any evidence, that Royal Caribbean owned, leased, or otherwise had a property interest in any of the vehicles involved in the accident that occurred during the Shore Excursion. Instead, Morrell simply contends that the doctrine imposed a duty on Royal Caribbean, in light of its relationship with Pelicanos, to warn Weiler about the inherent dangers of operating a dune buggy. This contention is plainly meritless for at least two reasons.

First, the applicable case law is clear that the doctrine may only be applied to a party who has "an identifiable property interest" in the vehicle at issue. *See Aurbach,* 753 So.2d at 62. As explained, Morrell has not even alleged, much less shown, that Royal Caribbean had such an interest in any of the vehicles involved in Weiler's accident, and has not cited any authority in support of an expansion of the doctrine. Second, Morrell has not offered any authority for its contention that the doctrine created an independent duty for Royal Caribbean to warn Weiler about the inherent dangers of dune buggies. The doctrine acts to impose vicarious liability on the owner of a vehicle for its negligent operation by another. *Id.* It is wholly inapposite to the question of whether Royal Caribbean owed an independent duty to Weiler to warn her of an otherwise obvious danger.

For the foregoing reasons, the undersigned concludes that Morrell cannot demonstrate Royal Caribbean owed Weiler a duty to warn her of the inherent dangers of a dune buggy. Both of Morrell's negligence claims which are premised on this duty must fail.

## 2. Proximate Cause

■ In addition to establishing that there was a duty to warn Weiler, Morrell must also prove that Royal Caribbean's breach of that duty was the proximate cause of Weiler's injuries. *See Hasenfus,* 962 F.2d at 1559–60. Royal Caribbean argues that Morrell cannot satisfy this burden. Even assuming that Royal Caribbean had a duty to warn Weiler, Morrell has failed to proffer any evidence that this failure to warn was the proximate cause of Weiler's injuries. At oral argument, Morrell in fact conceded that it had not offered affirmative evidence of proximate causation. Instead, it asserted that no such proof was necessary, relying on the argument in its opposition papers that "there should be no doubt that Weiler's injuries were proximately caused by [Royal Caribbean's] negligent conduct because the same harm may reasonably be expected to recur if the same act or omission is repeated in a similar context." (*Morrell Opp.* at 38) (citing *McCain v. Fla. Power Corp.,* 593 So.2d 500, 503 (Fla.1992)).

In *McCain,* the case cited by Morrell for this extraordinary proposition, the court addressed foreseeability in the context of proximate cause and considered whether it was foreseeable that a power company employee's decision to mark an area as "safe" could lead to the subsequent injury of a construction worker when the trench machine he was operating hit an electrical cable buried in that area. *Id.* Notably, the court in *McCain* premised its conclu-

sion that the plaintiff could sustain a showing of proximate cause on the basis that plaintiff had offered affirmative evidence that "the power company's agent marked those areas where [the plaintiff] could safely dig," and "this marking was done negligently, causing [the plaintiff] to operate the trencher in an area where an energized cable lay buried." *Id.* at 505. In contrast, Morrell has offered absolutely no evidence of a link between Royal Caribbean's purported failure to warn Weiler and the subsequent accident, beyond mere speculation. It is undisputed that there is nothing in the record to demonstrate that if Royal Caribbean had warned Weiler of the obvious dangers posed by a moving dune buggy, that warning would have had any impact on her decision to participate in the Shore Excursion or on whether the accident would have occurred.

Because Morrell has not offered any evidence to satisfy this essential element of both of its negligence claims, those claims must necessarily fail on this basis as well. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 ("complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. Royal Caribbean's Motion for Final Summary Judgment **[D.E. 77]** is **GRANTED.** Judgment for Royal Caribbean will be entered by separate order.

2. The Clerk of Court is ordered to **CLOSE** this case.

3. All pending motions are **DENIED AS MOOT.**