SCHWARTZ, Senior Judge.
 

 On April 14, 2005, the plaintiffs’ decedent Audrey McCollum was run over and killed by a huge mobile crane at the Port of Miami. This case is an appeal by the entity whose role in the tragedy was confined to selling the crane to another defendant and agreeing to keep it in good repair. Although it neither designed, manufactured or operated the crane at the time of the accident, nor owned or controlled the property where Ms. McCollum was killed, the jury found it partially liable for the death. Because we find no legal basis for the appellant’s liability in this case, we reverse the ensuing judgment against it with directions to enter judgment in its favor.
 
 [1]
 

 
 *67
 
 We consider and reject each of the even arguable bases upon which the appellant may be held liable:
 

 (1) The primary duty and responsibility of a seller and servicer of equipment like Liebherr-America is ordinarily found in the claim that, at the time of the sale, the equipment contained a defect which rendered it unreasonably dangerous to persons in the vicinity of the crane. See
 
 West v. Caterpillar Tractor Co.,
 
 336 So.2d 80 (Fla.1976);
 
 American Aerial Lift, Inc. v. Perez,
 
 629 So.2d 169 (Fla. 3d DCA 1993). There was much conflicting evidence in the case on that issue, but it fell completely out of the case when the jury found that the crane was
 
 not
 
 defective at the time of the sale. In this decisive respect the present case is identical to
 
 Siemens Energy & Automation, Inc. v. Medina,
 
 719 So.2d 312 (Fla. 3d DCA 1998), which alone requires reversal.
 

 (2) An alternative argument pursued by the plaintiffs was an alleged breach of the appellant’s obligation to appropriately service the crane after its sale. It is true that there is some evidence that
 
 *68
 
 at the time of accident, some two years after the sale, one of the horns or other warning device was not operating properly. But this fact alone cannot give rise to liability in the absence of two crucial elements of such a claim. First, there was no evidence that the asserted failure (a) had previously occurred or (b) more important, that the appellant was on notice of such an impropriety, so that (c) even more significant, it had been guilty of any negligence in failing to repair it.
 
 Siemens,
 
 719 So.2d at 315;
 
 Advance Chem. Co. v. Harter,
 
 478 So.2d 444, 447 (Fla. 1st DCA 1985);
 
 Williams v. Joseph L. Rozier Machinery, Co.,
 
 135 So.2d 763, 765 (Fla. 2d DCA 1962). Secondly, and independently, there was no showing that the failure of the horn had anything to do with, that is, was even
 
 a
 
 legal cause of the accident. See
 
 Gooding v. Univ. Hosp. Bldg., Inc.,
 
 445 So.2d 1015, 1018 (Fla.1984);
 
 Proto v. Graham,
 
 788 So.2d 393, 396 (Fla. 5th DCA 2001).
 

 (3) The issue most emphasized by the appellees is the claim that there was a breach of a “duty to warn” of the dangers presented by the operating crane. We find it unnecessary to discuss at length the factual nuances of this claim or the appellants’ insistence that the danger was so open and obvious that no duty could arise. This is so because in what is essentially a product liability case like this, there is simply no duty on the part of a seller (or anyone in the distributive chain) to warn of dangers presented by its operation after it has passed from its control. Any such duty is placed either on the allegedly negligent operator of the crane, who was the employee of another defendant, or on the owner of the property on which the decedent was an invitee or licensee, which was still another. See
 
 Foley v. Hialeah Race Course, Inc.,
 
 53 So.2d 771 (Fla.1951);
 
 Food Fair, Inc. v. Gold,
 
 464 So.2d 1228 (Fla. 3d DCA 1985);
 
 Schatz v. 7-Eleven, Inc.,
 
 128 So.2d 901 (Fla. 1st DCA 1961). Despite the tragic aspects of this case, we cannot hold otherwise.
 

 Reversed and remanded.
 

 [1]
 

 . We adopt with pertinent revisions the statement of the case and facts contained in the appellants' initial brief as a fair description of the circumstances of the accident and the litigation below:
 

 This case arises out of the death of Audrey McCollum, who on April 14, 2005, was crushed and instantly killed when the wheel assembly of a large harbor mobile crane ran over her. At the time of her death, Ms. McCollum — a veteran longshoreman and member of non-party-defendant International Longshoremen's Assoc. Local 1416 — was on duty at the Port of Miami for her employer, non-party-defendant Eller-ITO Stevedoring Co. L.L.C., where she had worked for almost 15 years.
 

 Appellant-defendant Liebherr-America, Inc., did not design or manufacture the crane. Rather, Liebherr-America, Inc., merely sold the mobile harbor crane to settling defendant Seaboard Marine, Ltd., Inc., and entered into a service agreement with Seaboard Marine to keep the crane in good repair. The mobile crane’s owner, settling defendant Seaboard Marine, also controlled the dock (as lessee) where the accident occurred.
 

 The circumstances surrounding Ms. McCollum's death were captured on surveillance videotape; as such, the facts are, by and large, not in dispute. While on duty, sometime before midnight, Ms. McCollum took a folding chair just underneath the mobile harbor crane while it was in operation and placed it directly in front of one of the crane's many wheel assemblies (specifically, no. 13 of 16 assemblies
 
 1.
 
 ) and then sat down in the chair, either to rest or to sleep. At the time that Ms. McCollum went under the crane, the crane's wheel assemblies were off the ground, lifted up by the crane’s out-riggers — that is, its hydraulically extensible supports whose purpose is to lift and stabilize the crane and prevent it from moving during loading operations.
 

 About five minutes before midnight, immediately prior to Ms. McCollum's death, the crane completed its loading operations and readied itself for travel. The process of transitioning the crane from loading to travel is extensive: after placing the controls into "travel mode," the crane's outriggers slowly retract (which correspondingly lowers the crane onto its wheel assemblies); revolving yellow warning lights located at both ends of the crane activate; two warning bells mounted on the fore and aft of the crane activate; and an "all-clear” is announced over the crane’s public address system. The purpose of the bells, flashing lights and the "all clear” announcement is to alert those located on the dock that the crane is ready to move. This extensive process preceding the travel of the machine is observed on the surveillance videotape taken of the scene before and after the accident, and lasts for about a minute and half before the crane begins to move. As the videotape shows, the crane slowly moved some 35 feet away from its original location and then came to an abrupt stop.
 

 Unfortunately, Ms. McCollum remained in her folding chair throughout this process, either at rest or asleep. She was crushed to death, consequently, when the crane moved forward and the wheel assem
 
 *67
 
 bly that she was sitting in front of ran over her.
 

 Plaintiffs filed this lawsuit against Lie-bherr-America, alleging
 
 inter alia
 
 that the crane was defective in its design for failing to install lights and alerting devices (such as horns or strobes)
 
 underneath
 
 the chassis of the crane. Plaintiffs also alleged that, in its capacity as the crane’s service provider, Liebherr-America should have retrofitted the crane with lights, horns, warning signs, and the like. Finally, Plaintiffs alleged that a warning should have been provided with the crane instructing persons not to go under the crane at any time. When presented with evidence that the crane’s manual warned against being in the area where the accident occurred and that a sticker located near the top of the machine’s stairs warned of crushing hazards, the plaintiffs additionally alleged that these warnings were inadequate because they were not "better placed.”
 

 Upon Liebherr-American's motion for summary judgment, the trial court ruled on March 20, 2008, that, under a theory of negligence, Liebherr-America had no duty concerning the design or manufacture of the crane (because it did not design or manufacture it
 
 [2]
 
 ) and that it had no duty to retrofit the crane with additional safety devices after its sale. The trial court denied, however, that part of the motion which argued that Liebherr-America had no duty to warn....”
 

 [[Image here]]
 

 On April 10, 2008, after a fourteen-day trial before Hon. Judge Mary Barzee Flores in the Circuit Court of the 11th Judicial Circuit in Miami-Dade County, the jury found that Liebherr-America was negligent, and that such negligence was a contributing factor (assessed at 10%) in the death of Ms. McCollum. The jury also found, however, that the crane was
 
 not defective
 
 when it left Liebherr-America’s possession, or in the alternative, that any defect was not a contributing factor in Ms. McCollum’s death.
 

 The jury apportioned fault as follows:
 

 Audrey McCollum 5%
 

 Charles Schroeder
 
 [3]
 
 11%
 

 Eller-ITO Stevedoring Co. LLC
 
 [4]
 
 28%
 

 International Longshoremen’s Assoc. Local 1416
 
 [5]
 
 17%
 

 Seaboard Marine, Ltd., Inc.
 
 [6]
 
 28%
 

 Liebherr-America, Inc. 10%
 

 1.
 

 Each of the sixteen wheel assemblies consists of four wheel/tire assemblies, side by side.
 

 [2]
 

 The crane was manufactured by Lie-bherr-Werk Nenzing GmbH., which was never made a party to the lawsuit.
 

 [3]
 

 Charles Schroeder was a full-time nonunion employee of the company that had hired the decedent. He was responsible for checking the area around the crane before ordering it to move.
 

 [4]
 

 Eller-ITO Stevedoring was the decedent’s employer.
 

 [5]
 

 International Longshoremen's Assoc, was the decedent's union.
 

 [6]
 

 Seaboard Marine was the owner of the loading dock and the subject crane. It settled with the plaintiffs before trial.