Jack **LIPKIN**, Plaintiff,

v.

**NORWEGIAN CRUISE LINE LIMITED; Norwegian Cruise Lines, Inc.; NCL (Bahamas) Ltd., d/b/a NCL; NCL America, Inc., and Miami–Dade County, Defendants.**

**Case No. 13–CV–24206.**

United States District Court, S.D. Florida.

Signed March 6, 2015.

Scott Lyon Henratty, MaloveHenratty, P.A., Fort Lauderdale, FL, for Plaintiff.

Amanda Jane Freilich, Brian Hugo McGuire, Darren Wayne Friedman, Jeffrey Eric Foreman, Foreman Friedman, PA, Miami, FL, Erica Sunny Shultz Zaron, Miami, FL, Richard Charles Seavey, Metro Dade Center, Miami, FL, for Defendants.

## ORDER

KATHLEEN M. WILLIAMS, District Judge.

THIS MATTER is before the Court on the Norwegian Defendants' Motion to Dismiss the Amended Complaint, [D.E. 21] and the Norwegian Defendants' Motion for Summary Judgment [D.E. 40], Miami–Dade County's Motion to Dismiss the Amended Complaint [D.E. 28] and Miami–Dade County's Motion for Summary Judgment [D.E. 38]. For the reasons stated below, the Norwegian Defendants' Motion to Dismiss is GRANTED IN PART, the Norwegian Defendants' Motion for Summary Judgment is GRANTED, Miami–Dade County's Motion to Dismiss is DENIED, and Miami–Dade County's Motion for Summary Judgment is GRANTED.

## I. Background

Plaintiff Jack Lipkin is an 83–year–old resident of Delray Beach, Florida. In November 2012, Lipkin traveled on an 11–day cruise with his wife, Natalie, aboard the Norwegian *Sun* [D.E. 46 at 1]. The cruise concluded on November 25, 2012, at the Port of Miami, where Lipkin and his wife disembarked from the ship and entered Port Terminal C, heading toward the baggage claim area [D.E. 40 ¶¶ 4–5]. While his wife sought wheelchair assistance, Plaintiff, walking with the aid of a cane, stepped onto a moving walkway (alternately referred to as a people mover) to traverse a hallway in the terminal. *Id.* at ¶ 8. Lipkin stood still on the left side of the tread belt among about 10 other cruise passengers, including a woman assisting a man in a wheelchair on the walkway in front of him. *Id.* at ¶¶ 15, 17. For reasons unknown, the wheelchair became stuck at the end of the walkway, creating a barrier to oncoming passengers on the walkway, including Lipkin. *Id.* at ¶ 19. While attempting to free the wheelchair, the woman (whose identity remains unknown) collided with Lipkin, causing him to fall [D.E. 48 ¶ 20]. Lipkin suffered a broken hip in the fall [D.E. 45–10 at 8–9].

Lipkin originally filed this action against the Norwegian Defendants on November 20, 2013 [D.E. 1]. The original Complaint contained twelve claims of negligence and breach of contract against the four Norwegian Defendants. *Id.* Lipkin subsequently filed an Amended Complaint to add Miami–Dade County as a Defendant [D.E. 17]. The Amended Complaint asserts four negligence claims and four breach of contract claims against the four Norwegian Defendants, and a negligence claim against Miami–Dade County. *Id.*

In his Amended Complaint, Lipkin advances several theories of negligence liability, alleging, among other things, that Norwegian breached its duty of care by "allowing or directing people to access and/or use people movers in wheelchairs," "fail[ing] to safely and properly assist and/or monitor people walking through their building," and "fail[ing] to reasonably and safely warn Plaintiff of the dangers of people using wheelchairs on the people movers." *Id.*

At the time of the accident, no Norwegian employees were present at the entrance or exit of the moving walkway [D.E. 40 ¶ 10]. Yellow warning decals were affixed at the base of the walkway at its entrance and exit, which read: "Caution Passengers Only" [D.E. 40–4 at 2; D.E. 40–5 at 21]. The signs also instructed

passengers to "hold handrail," "attend children," and "avoid sides," and they included an illustration of a wheeled device (described by the Norwegian Defendants as either a "cart" or "chair") inside a red circle with a slash [D.E. 40 ¶¶ 10; D.E. 40–5 at 21]. The walkway is owned by Miami–Dade County and maintained by the County under an agreement with the walkway's manufacturer, Schindler [D.E. 48 ¶ 2; D.E. 40–2 at 6].

The Norwegian Defendants have filed a motion to dismiss the Amended Complaint on the grounds that Lipkin is asserting negligence claims under Florida law in this maritime action [D.E. 21], and a motion for summary judgment [D.E. 40]. Miami–Dade County has also filed a motion to dismiss, in which it argues that the Court does not have subject matter jurisdiction because the claims against Norwegian are not in fact in admiralty [D.E. 28], and a motion for summary judgment [D.E. 38]. Plaintiff opposes the motions.

## II. Miami–Dade County's Motion to Dismiss for Lack of Subject Matter Jurisdiction [D.E. 28]

Because district courts are courts of limited jurisdiction, the Court first must examine where it has subject matter jurisdiction over this case. *See, e.g., Miccosukee Tribe of Indians of Fla. v. Cypress*, 975 F.Supp.2d 1298, 1305 (S.D.Fla.2013). In his Amended Complaint, Plaintiff has asserted a single negligence claim against Miami–Dade County for "allowing" cruise passengers to use wheelchairs on the walkway, and for the County's failure to warn of this danger [D.E. 17 ¶ 60]. The County has filed a motion to dismiss the case, arguing that the Court does not have subject-matter jurisdiction over this action because the claims against Norwegian do not arise in admiralty [D.E. 28 at 6–16]. The County further argues .that the Court should decline to exercise supplemental jurisdiction over the claim against the Coun-

ty because the state law claim predominates over the maritime claims. *Id.* at 16–18. Plaintiff [D.E. 29] and the Norwegian Defendants [D.E. 32] have objected to the motion.

### A. Standard of Review

The County has moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) [D.E. 28]. A Rule 12(b)(1) motion to dismiss may present a facial or factual attack on subject-matter jurisdiction. *McElmurray v. Consol. Gov't of August–Richmond Cnty.*, 501 F.3d 1244,1251 (11th Cir.2007). Facial attacks challenge subject-matter jurisdiction based on the allegations in the complaint, and the district court takes as true the allegations contained in the complaint when considering the motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). In contrast, factual attacks challenge the existence of subject-matter jurisdiction in fact, and in such cases "no presumptive truthfulness attaches to plaintiff's allegations." *Id.*

### B. Analysis

The County's principal argument is that, because Plaintiff's injury occurred in the Port of Miami Terminal after disembarking from the Norwegian *Sun*, this matter does not fall within the Court's admiralty jurisdiction [D.E. 28 at 6–16]. To determine if a claim falls within a court's admiralty jurisdiction, the court must consider the site of the tort (the "locality" test) and the relationship between the tort and traditional maritime activity (the "nexus" test). *See Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 923–24 (11th Cir.2001) (citing *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)). Both Plaintiff and Norwegian assert that the allegations

raised in the Amended Complaint satisfy the locality and nexus tests to establish admiralty jurisdiction [D.E. 29; D.E. 32].

■■■ "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Courts of this circuit have held that torts committed by cruise lines or their employees while in port may satisfy the location test. *See, e.g., Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 899 (11th Cir.2004); *Duck v. Royal Caribbean Cruises, Ltd.,* No. 11–22702–FAM (S.D. Fla. June 28, 2013) [D.E. 46]. This includes torts committed on shore by a ship or its employees "while the vessel is being unloaded." *See Duck,* D.E. 46 at 3. For this reason, an alleged injury in port during the disembarkation process satisfies the location test because "the process of transporting cruise ship passengers from the ship to a nearby point onshore is part of the 'unloading' of that vessel." *Id.*

■ In this case, the Amended Complaint alleges that Norwegian and/or its employees were negligent for failing to prevent the collision on the walkway during the disembarkation process [D.E. 17 ¶¶ 13–14]. Because the disembarkation process is part of the unloading of a vessel, the Court finds that the tort as alleged in the Amended Complaint was caused by the Norwegian *Sun* for purposes of the location test.

■ Under the "nexus test," a court must examine (1) whether the incident had a potentially disruptive impact on maritime commerce, and (2) whether a substantial relationship existed between the activity giving rise to the incident and traditional maritime activity. *Bunge,* 240 F.3d at 924–25. Here, Plaintiff asserts that Norwegian is negligent for "allowing or directing people to disembark on wheelchairs while using the people movers without supervision" [D.E. 17 ¶ 21(b) ]. "The failure to provide for the safe unloading of a commercial vessel such as a cruise ship has a rather obvious potential to disrupt maritime commerce." *Duck,* D.E. 46 at 3–4. And the "failure to provide a reasonably safe means of debarking, with consequent injury to the passenger, is a tort within admiralty jurisdiction." *Tullis v. Fid. and Cas. Co. of N.Y.,* 397 F.2d 22, 23–24 (5th Cir.1968).[1] The Court therefore finds that the tort alleged in the complaint also satisfies the connection test, and this cause of action is within its admiralty jurisdiction.

Because the Court finds that the Amended Complaint falls within the admiralty jurisdiction of this Court, Miami–Dade County's motion to dismiss [D.E. 28] is DENIED.

## III. Norwegian's Motion to Dismiss for Failure to State a Claim [D.E. 21]

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cnty.,* 999 F.2d 1508, 1510 (11th Cir.1993). All factual allegations are accepted as true

---

1. Decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir.1981).

and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir.2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir.1998). Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable," but the "[f]actual allegations must be enough 'to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir.2007) (quoting *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955).

## B. Analysis

### 1. Plaintiff's Negligence Claims

According to the Amended Complaint, Plaintiff was injured on the people mover "while attempting to disembark the Norwegian *Sun*" [D.E. 17 ¶ 13]. Plaintiff alleges that Norwegian was negligent by allowing and/or directing people to use wheelchairs on the Port terminal people mover; by failing to prevent passengers from using wheelchairs on the people mover; by failing to assist people walking through the Port terminal; and, more broadly, for failing "to provide reasonably safe means of egressing through the building." *Id.* at ¶ 21. Plaintiff has attempted to bring this claim under maritime law as a cruise passenger and alternatively as a premises liability claim under Florida law [D.E. 23 at 2–9]. Norwegian argues that, because this action is before the Court under its admiralty jurisdiction, Plaintiff's negligence claim against the cruise line

must be based solely on maritime law [D.E. 21 at 5–8].

The Court has already determined that Plaintiff's claims against Norwegian fall within the Court's admiralty jurisdiction, as Plaintiff has conceded [D.E. 23 at 7–9]. Torts committed within the Court's admiralty jurisdiction are governed by maritime law. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). For this reason, Plaintiff's claims against Norwegian must be based on maritime law; and to the extent that Plaintiff seeks to assert a negligence claim against Norwegian based on premises liability or any other theory of negligence under Florida law, this claim must be dismissed. *See, e.g., Stewart–Patterson v. Celebrity Cruises, Inc.*, No. 12–20902–CIV, 2012 WL 2979032, at *2 (S.D.Fla. July 20, 2012) (holding that a claim based on a cruise line's "negligent mode of operation" under Florida law is "not cognizable under federal admiralty law").

To state a negligence claim under maritime law, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir.2012). Under maritime law, "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec*, 358 U.S. at 630, 79 S.Ct. 406. This standard "requires as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama*

*Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir.1989). Actual or constructive notice need not be established if the defendant created the hazardous condition. *Caldwell v. Carnival Corp.*, 944 F.Supp.2d 1219, 1224 (S.D.Fla.2013); *Long v. Celebrity Cruises, Inc.*, 982 F.Supp.2d 1313, 1316–17 (S.D.Fla.2013).

 Because cruise ship operators are common carriers with a "continuing obligation of care for their passengers," *see Carlisle v. Ulysses Line Ltd.*, 475 So.2d 248, 251 (Fla.Dist.Ct.App.1985), their duty of reasonable care includes the duty to warn passengers of the "known dangers" which exist "beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336. However, this duty "encompasses only 'those dangers which are not apparent and obvious to the passenger.'" *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F.Supp.2d 1308, 1323 (S.D.Fla.2011) (quoting *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1237 (S.D.Fla. 2006)).

Norwegian argues that Plaintiff has failed to allege that Norwegian had actual or constructive knowledge of any known hazard at the Port terminal, and that the dangerous condition of a wheelchair jammed on the people mover was open and obvious to Plaintiff, such that Norwegian had no duty to warn [D.E. 21 at 7–8]. In response, Plaintiff argues that the danger of the people mover was not open and obvious, and that Norwegian created the hazardous condition [D.E. 23 at 4–5]. In his complaint, Plaintiff alleges that Norwegian "owned, operated and/or managed the building which contained the people mover and/or the personnel who operated, managed or controlled movement on the people mover" [D.E. 17 ¶ 18]. As discussed above, actual or constructive notice need not be established if the defendant created the hazardous condition. *Caldwell*, 944

F.Supp.2d at 1224. Because the complaint alleges that Norwegian was the owner and operator of the people mover, Plaintiff's failure to allege that Norwegian had actual or constructive notice is not fatal to this claim.

 The question of whether the allegedly dangerous condition was open or obvious "requires a context specific inquiry and necessitates development of the factual record before the Court can decide whether, as a matter of law, the danger was open and obvious." *Prokopenko v. Royal Caribbean Cruises, Ltd.*, No. 10–20068–CIV, 2010 WL 1524546, at *3 (S.D.Fla. Apr. 15, 2010); *Joseph v. Carnival Corp.*, No. 11–20221–CIV, 2011 WL 3022555, at *4 (S.D.Fla. July 22, 2011). The Court therefore finds the open and obvious issue inappropriate for disposition on this motion.

Taking all of the facts alleged in the complaint as true, as required on a motion to dismiss, the Court finds that Plaintiff has adequately stated a negligence claim against Norwegian for breaching its duty to warn of the alleged dangers of the people mover. As to this theory of negligence liability, Norwegian's motion to dismiss is denied; but Plaintiff's alternative theories of negligence based on Florida law are dismissed with prejudice for the reasons stated above.

**2. Plaintiff's Breach of Contract Claims**

Plaintiff also alleges that Norwegian breached its Guest Ticket Contract with Plaintiff by "failing to return him to the point of disembarkation safely" [D.E. 17 ¶ 26]. Norwegian argues that this claim must be dismissed because the Guest Ticket Contract contains no provision guaranteeing safe passage [D.E. 21 at 9].

It is well established in this district that "maritime law will not support a passenger's breach of contract claim unless there is an express provision in the contract of carriage guaranteeing safe passage." *Doonan v. Carnival Corp.*, 404 F.Supp.2d 1367, 1372–73 (S.D.Fla.2005); *see also Doe v. Celebrity Cruises*, 145 F.Supp.2d 1337, 1346–47 (S.D.Fla.2001); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F.Supp.2d 1367, 1377–78 (S.D.Fla. 2002); *Terry v. Carnival Corp.*, 3 F.Supp.3d 1363, 1367–68 (S.D.Fla.2014). Plaintiff does not dispute Norwegian on this point but seeks to preserve this issue for appeal to the Eleventh Circuit [D.E. 23 at 9–10]. Accordingly, Plaintiff's breach of contract claims are dismissed with prejudice.

### 3. The Improper Norwegian Parties

The Norwegian Defendants assert that NCL (Bahamas) Ltd., as the only Defendant party to the Guest Ticket Contract with Plaintiff, is the only proper Defendant in this action, and the remaining Defendants—Norwegian Cruise Line Limited, Norwegian Cruise Lines, Inc., and NCL America, Inc.—are inactive and/or dissolved entities [D.E. 21 at 10]. In response, Plaintiff sought leave of the Court to conduct discovery to determine if any of the other Norwegian Defendants played any role in the company's activities at the Port of Miami terminal where the alleged tort occurred [D.E. 23 at 10]. Because Plaintiff has essentially conceded that it has no information on which to form a reasonable belief that these Defendants have any liability in this matter, the motion to dismiss the claims against Norwegian Cruise Line Limited, Norwegian Cruise Lines, Inc., and NCL America, Inc., is GRANTED.[2]

For the reasons stated above, it is ORDERED AND ADJUDGED that Counts I, II, III, IV, VI, VII and VIII of the Amended Complaint [D.E. 17] are DISMISSED WITH PREJUDICE.

## IV. Norwegian's Motion for Summary Judgment [D.E. 40]

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . . admissions, interrogatory answers, or other materials. . . ." Fed.R.Civ.P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir.2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine

---

**2.** These defendants would also be entitled to summary judgment, as Plaintiff has not offered any facts indicating their liability in either his opposition to the motion for summary judgment [D.E. 46] or his statement of material facts [D.E. 48].

the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

Finally, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a sufficient showing to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, "[i]f the non-movant ... fails to adduce evidence which would be sufficient ... to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1370 (11th Cir.1997) (citation omitted).

**B. Analysis**

In its Motion, Norwegian raises four principal arguments: (1) Norwegian had no actual or constructive notice of a risk-creating condition; (2) because the risk was open and obvious, Norwegian had no duty to warn passengers of the danger; (3) if Norwegian did have a duty to warn, the cruise line discharged that duty; and (4) Norwegian's alleged negligence was not the proximate cause of Plaintiff's injury [D.E. 40].[3]

3. In its reply brief, Norwegian argues, for the first time, that because Plaintiff had successfully disembarked from the vessel, Norwegian had fully discharged its duty of care to Plaintiff [D.E. 59 at 1–2] "Arguments raised for the first time in a reply brief are not properly before a reviewing court" *Herring v. Sec'y, Dept. of Corr.,* 397 F.3d 1338, 1342 (11th Cir.2005). Accordingly, the Court will not consider this argument.

4. Norwegian argues that, where a defendant has placed a warning label "as a safety precaution and not in response to complaints," then the warning should not be considered evidence of a defendant's constructive or actual notice of the dangerous condition [D.E.

**1. Actual or constructive notice**

As discussed above, a cruise line's duty of reasonable care "requires as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe,* 867 F.2d at 1322. Norwegian argues that Plaintiff has failed to put forward any evidence indicating that Norwegian had actual or constructive notice of the allegedly dangerous condition of the people-mover [D.E. 40 at 7–9]. In response, Plaintiff points to the warning decal placed on the people-mover by its manufacturer [D.E. 46 at 3]. The decal appears to include an image of a luggage cart or other rolling device with a red slash through it, indicating that such carts should not be placed on the walkway [D.E. 40–5 at 21]. Lipkin also relies on the deposition testimony of Lourdes Gonzalez, Norwegian's Manager of Guest Port Services, who acknowledged that she was vaguely aware of the warning sticker on the walkway, though she was not sure what it said [D.E. 63–1 at 24, 29].

Lipkin argues that the warning label "is, by itself, evidence of a property owner's or possessor's knowledge or awareness of the danger to which the warning is directed" [D.E. 46 at 7]. In response, Norwegian argues that the "mere presence of a warning does not establish notice of a dangerous condition" [D.E. 59 at 3].[4]

59 at 3–4]. This rationale was articulated in *Hilsman v. Sarwil Assocs., LP.,* in which the court held that a warning sign is not evidence of notice if the sign was used "either as a purely precautionary measure or in response to a condition that had been addressed prior to the accident." *Hilsman v. Sarwil Assocs., LP.,* 13 A.D.3d 692, 695, 786 N.Y.S.2d 225 (N.Y.App.Div.2004). However, just as in *Hilsman,* the Norwegian Defendants have not cited any evidence indicating that the warning signs on the walkway in the Port of Miami terminal were purely precautionary, or that they were intended to address a condition since remedied. Moreover, the facts of *Hilsman* are distinguishable because in that case it was the defendant that displayed the warn-

Courts in this district have generally found that a warning sign or warning label may be evidence that a defendant had actual or constructive notice of a dangerous condition. *See Merideth v. Carnival Corp.*, 49 F.Supp.3d 1090, 1094–95, 2014 WL 4817478, at *4 (S.D.Fla.2014) (presence of warning cones in the area of a plaintiff's injury may be evidence of actual or constructive notice); *Harnesk v. Carnival Cruise Lines, Inc.*, No. 87–2328–CIV–DAVIS, 1991 WL 329584, at *4 (S.D.Fla. Dec. 27, 1991) (warning strips placed on a trip hazard were evidence of actual notice of the dangerous condition); *Esanu v. Oceana Cruises, Inc.*, 49 F.Supp.3d 1078, 1080–81, 2014 WL 4954401, at *2 (2014) (defendant's use of a "slippery when wet" sign could lead a reasonable jury to conclude that defendant had actual knowledge of the risk). However, in all of these cases, the warning sign or label was considered evidence of a defendant's notice because the defendant itself was responsible for the warning. This is because the defendant's use of the warning created the logical inference that the defendant had prior knowledge of the dangerous condition necessitating the warning. But that is not the case here, where the undisputed evidence shows that the walkway manufacturer, not Norwegian, affixed the warning labels, and that Miami–Dade County, not Norwegian, was responsible for maintenance of the walkway.[5] Under these circumstances, the warning labels along the walkway create no inference of Norwegian's "actual or constructive notice of the

risk-creating condition." *Keefe*, 867 F.2d at 1322. Therefore, Plaintiff must rely on other evidence to meet its burden to show that there is a genuine issue of material fact regarding Norwegian's actual or constructive notice of the hazard posed by wheelchairs on the walkway.

First, Plaintiff argues that Norwegian must have had actual or constructive knowledge of the risk because Norwegian effectively took control of the terminal after Miami–Dade County personnel completed their security sweep [D.E. 46 at 3; D.E. 46–19]. The mere fact that Norwegian exercised control over the terminal does not, in itself, suffice to show that Norwegian had actual or constructive notice of a risk-creating condition. The "mere implication of actual or constructive notice is insufficient to survive summary judgment"; rather, a plaintiff must show "specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action." *Cohen v. Carnival Corp.*, 945 F.Supp.2d 1351,1357 (S.D.Fla.2013) (internal citation omitted).

Next, Plaintiff cites the deposition testimony of Gonzalez, Norwegian's Manager of Guest Port Services [D.E. 46 at 4]. But Gonzalez testified only that she knew about the existence of the warning label on the walkway [D.E. 63–1 at 24]. She did not testify that she knew the content of the warning, or that she knew of any risk or danger giving rise to the warning.[6] And while Gonzalez testified that she expected Norwegian contractors[7] and security

---

ings. Thus, even if the Court were to adopt the exception articulated in *Hilsman*, it would not be applicable in this case.

5. In her deposition, Gonzalez testified that she was not aware of any warning provided by Norwegian to passengers regarding the use of wheelchairs on the people mover [D.E. 63–1 at 25–26].

6. It is not entirely clear from the record whether Gonzalez knew of the existence of

the warning labels prior to this litigation. When asked whether she knew the content of the warning, she replied: "I have seen it on the pictures," and she could not describe the warning label in any detail [D.E. 63–1 at 29].

7. Norwegian contracts with a company called SMS International Shore Operations to "meet and greet" passengers and oversee debarkation of the ship at the Port Terminal [D.E. 63–1 at 6. 20].

guards at the terminal to discourage passengers from bringing wheelchairs on the walkway, this was out of concern that wheelchairs would "congest the line," not because of any danger of which she had prior knowledge. *Id.* at 33, Indeed, Gonzalez specifically testified that she didn't know whether using a wheelchair on the walkway would be dangerous. *Id.* Simply put, Gonzalez's testimony fails to establish that Norwegian had notice of any risk-creating condition involving the walkway.

Because Plaintiff has failed to cite any evidence in the record showing that Norwegian had actual or constructive notice of the risk-creating condition alleged in the complaint, and because evidence of notice is a prerequisite to liability under maritime law, summary judgment in favor of Norwegian is appropriate in this matter. *See Keefe*, 867 F.2d at 1322.

#### 2. Proximate Cause

■ Even assuming *arguendo* that Plaintiff has established Norwegian's notice of the alleged danger, and further assuming that this danger was not apparent and obvious, Plaintiff's negligence claim against Norwegian still would fail because he has not established that Norwegian's negligence was the proximate cause of his injuries. As discussed above, because Plaintiff's injury occurred off the ship at the terminal, Norwegian's only duty was to warn passengers of the "known dangers" which existed "beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336. Therefore, Plaintiff must show that Norwegian's breach of the duty to warn was the proximate cause of his injuries. *See John Morrell & Co. v. Royal Caribbe-*

*an Cruises, Ltd.*, 534 F.Supp.2d 1345, 1353 (S.D.Fla.2008). To meet this burden, Plaintiff must show that, had Norwegian adequately discharged its duty to warn of the danger of wheelchairs on walkways, Plaintiff would not have stepped onto the walkway behind the unknown elderly woman pushing the wheelchair.[8] But Plaintiff cites no record evidence to show that a genuine issue of material fact exists as to proximate cause. Instead, Plaintiff argues that "a court may determine that no proximate cause exists as a matter of law only in cases involving freak injuries that were utterly unpredictable in light of common human experience," citing *McCain v. Fla. Power Corp.*, 593 So.2d 500 (Fla.1992) [D.E. 46 at 17]. The Court finds that *McCain* does not foreclose summary judgment in this context, nor does it erase Plaintiff's burden to put forward evidence establishing that Norwegian's breach of its duty to warn was the proximate cause of Plaintiff's injuries. *See John Morrell*, 534 F.Supp.2d at 1353.

■ *McCain* concerns the relationship between a tortfeasor's duty of care and proximate causation, and discusses how the issue of foreseeability is applied to both of these elements. *McCain*, 593 So.2d at 503–4. Regarding proximate cause, *McCain* stands for the unremarkable proposition that, where both parties have offered evidence bearing on whether a plaintiff's specific injury was foreseeable to the defendant, the court should allow the proximate cause issue go to the jury. *Id.* at 505. But this rule is not applicable in this case, where Plaintiff has offered *no* evidence from which a reasonable jury could conclude that Norwegian's failure to warn was the proximate cause of Plaintiff's

---

**8.** Theoretically, Plaintiff could also establish proximate cause by showing that the woman pushing the wheelchair on the walkway would not have done so had she been warned of the danger by Norwegian. In any event, it does not appear that the woman has been identified or deposed [*see* D.E. 46 at 2, 16].

injury. Moreover, unlike *McCain*, this is not a case where the scope of a defendant's duty is defined by the "general and foreseeable risk of injury" created by the defendant's conduct. *Id.* at 504 (noting that the defendant power company "must shoulder a greater-than-usual duty of care in proportion to the greater-than-usual zone of risk" associated with the "transmission of electricity"). In a case such as this, a maritime negligence action based on a land-based risk, a defendant's duty is only to warn passengers of the "known dangers" which exist "beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336. For this reason, Plaintiff must cite some record evidence showing that Plaintiff would not have been injured had Norwegian fulfilled its duty to warn. *See John Morrell*, 534 F.Supp.2d at 1353 (granting summary judgment where the plaintiff failed to show that a "warning would have had any impact" on a plaintiff's decision to take part in a shore excursion where she was injured).

Accordingly, summary judgment must be granted in favor of Norwegian because Plaintiff has failed to establish that any negligence was the proximate cause of his injuries. For these reasons, Norwegian's Motion for Summary Judgment on Count V of the Amended Complaint is GRANTED.

## V. Miami–Dade County's Motion for Summary Judgment [D.E. 38]

In its Motion for Summary Judgment, Miami–Dade County argues that Plaintiff has failed to put forward any evidence of any duty the County owed to Plaintiff, any breach of duty, or that a breach was the proximate cause of Plaintiff's injury [D.E. 38 at 6–7]. Plaintiff opposes the motion [D.E. 45].

### A. The County's Duty to Plaintiff

To sustain a negligence claim under Florida law, a plaintiff must establish that (1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages. *Cooper Hotel Servs., Inc. v. MacFarland*, 662 So.2d 710, 712 (Fla.Dist.Ct. App.1995). To establish that a landowner or occupier breached a duty to protect, a plaintiff must show that the defendant failed to maintain the premises in a reasonably safe condition, or that the defendant failed to warn the plaintiff of a concealed peril of which it either knew or should have known. *Id. See also Burton v. MDC PGA Plaza Corp.*, 78 So.3d 732, 734 (Fla.Dist.Ct.App.2012) (internal citation omitted). "No liability can attach where it is not shown that the owner or proprietor had actual or constructive notice of the dangerous condition." *Winn–Dixie Montgomery, Inc. v. Petterson*, 291 So.2d 666, 668 (Fla.Dist.Ct.App.1974); *see also Ugaz v. Am. Airlines, Inc.*, 576 F.Supp.2d 1354, 1368 (S.D.Fla.2008).

In its motion, Miami–Dade County first argues that Plaintiff has failed to show that it had any actual or constructive notice of any danger, because there is no evidence that anyone with the county knew that the wheelchair was stuck on the walkway [D.E. 38 at 7–9]. In response, Plaintiff points to the deposition testimony of Geser Torres, the County's Terminal Operations Manager, who testified that he recognized that a wheelchair on the people mover could constitute a dangerous condition [D.E. 39–2 at 6–7]. Viewing the facts in the light most favorable to Plaintiff, the Court finds that there exists a genuine issue of material facts as to Miami–Dade County's actual knowledge that wheel-

chairs on the walkway may create a dangerous condition.

In his papers, Plaintiff also argues that the County owed him additional duties beyond the duty to maintain the premises in a reasonably safe manner and warn of known dangers. Specifically, Plaintiff asserts that the County had the "duty of keeping wheelchairs off the walkways," the duty to inspect the walkways for potential hazards, and the duty to control the conduct of the unknown passenger who collided with Plaintiff [D.E. 45 at 9–10]. The County argues that Plaintiff is seeking to impermissibly expand its duty of care [D.E. 56 at 2–7].

**1. The duty to "keep wheelchairs off the walkway"**

Plaintiff argues that Miami–Dade County "assumed the duty of keeping wheelchairs off the walkways," based on "the County's admitted practice of not allowing wheelchairs on its moving walkways, by its instructions to its employees to prevent passengers from bringing wheelchairs on the walkways, and by the County's Terminal Operations Specialist's acknowledgement that that was one of his duties" [D.E. 45 at 9–10]. Plaintiff argues that this theory of liability is applicable under the "undertaker's doctrine." *Id.* The County argues that Plaintiff has misstated the facts in the record in an effort to support this theory of liability [D.E. 56 at 4–5].

Under the "undertaker's doctrine," one who undertakes to render services to another which he or she should recognize as necessary for the protection of a third person is subject to liability to the third person for physical harm resulting from his or her failure to exercise reasonable care, if (1) the failure to exer-

cise reasonable care increases the risk of such harm. (2) he or she has undertaken to perform a duty owed by the other to the third person, or (3) the harm is suffered because of reliance of the other or the third person upon the undertaking. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182, 1186 (Fla.2003). While Plaintiff has invoked this doctrine in its argument, he has made no effort to explain how this doctrine is applicable in this case, nor has he cited any record evidence in support of this argument.

Plaintiff's argument appears to be based on the deposition testimony of Paul Hinchey, the County's Terminal Operations Manager, and Torres. In his deposition, Hinchey stated that Miami–Dade County does not allow wheelchairs on the people mover [D.E. 48–26 at 4]. Torres also testified that wheelchairs are not permitted on the people mover, and that, if he saw a passenger attempting to place a wheelchair on the walkway, he was to tell that person not to do so [D.E. 39 at 6–7]. But Torres testified that his job duties did *not* entail regular monitoring of the people movers for wheelchairs: "We're not literally there to tell people, 'Don't go on there because you have a wheelchair.' We're not assigned to the escalators ... Our job is just to make sure the escalator is running and it's functional. That if it's not moving, that the handrail is not loose. Who is supposed to be there, that's out of my job duties." *Id.* at 7.

Even assuming that this testimony establishes that the County had a general "policy" prohibiting wheelchairs on the walkway,[9] as Plaintiff asserts, he has failed to explain how this is transformed by the undertaker's doctrine into an affirmative duty to police the walkway for errant wheelchairs. Plaintiff has not shown or

---

**9.** Frederick Wong, the acting assistant port director for port operations for the County, testified in his deposition that the port "does

not have a policy on wheelchairs that are prohibited" [D.E. 39–3 at 8].

even argued that Miami–Dade County's actions increased the risk of harm to Plaintiff. Nor has Plaintiff shown or argued that the County had undertaken to perform a duty owed by another to Plaintiff. And he has not shown or argued that he was injured because he or Norwegian relied on the County to ensure that the people mover was free of wheelchairs. Indeed, Plaintiff asserts in his statement of facts that "[t]he County expects Norwegian to see that its passengers traverse Terminal C safely from the ship to the baggage area and to keep wheelchairs off the moving walkway" [D.E. 48 ¶ 14]. The undertaker's doctrine is inapplicable to the facts of this case. *See Limones v. Sch. Dist. of Lee Cnty.,* 111 So.3d 901, 906 (Fla.Dist.Ct.App.2013) (finding that a school's acquisition of a defibrillator did not create a duty under the undertaker's doctrine to make a defibrillator available in an emergency). Accordingly, the Court finds that the Plaintiff has failed to establish that the County had an affirmative duty to monitor the people mover to prevent cruise ship passengers from bringing wheelchairs on the walkway.

### 2. The duty to inspect the premises to identify hazards

Next, Plaintiff argues that "the County had a duty to actively inspect the Terminal including its walkways under Florida's 'negligent mode of operation' theory in order to acquire information about, and prevent, potential hazards from materializing" [D.E. 45 at 10]. As described by the Florida Supreme Court, the negligent mode of operation theory is applicable where "the evidence establishes a specific negligent mode of operation such that the premises owner could reasonably anticipate that dangerous conditions would arise as a result of this mode of operation." *Markowitz v. Helen Homes of Kendall Corp.,* 826 So.2d 256, 259 (Fla.2002) (quoting *Owens v. Publix Supermarkets, Inc.,*

802 So.2d 315, 332 (Fla.2001)). "[T]he basis for the negligent mode of operation theory is the claim that the *specific* mode of operation selected by the premises owner or operator resulted in the *creation* of a dangerous or unsafe condition." *Markowitz,* 826 So.2d at 260; *see also Delgado v. Laundromax, Inc.,* 65 So.3d 1087, 1091 (Fla.Dist.Ct.App.2011) (emphasis added). For this reason, a plaintiff proceeding under a negligent mode of operation theory need not establish a defendant's actual or constructive knowledge of the dangerous condition, because "the dangerous obstacles were the creations of the defendant who in effect was on notice" from its own conduct. *Markowitz,* 826 So.2d at 260 (citing *Carls Mkts. v. Meyer,* 69 So.2d 789, 791 (Fla.1953)).

Though Plaintiff seeks to travel under this theory of negligence, he has once again failed to explain how this negligence theory is applicable under the facts of this case. In opposing the motion for summary judgment, Plaintiff offers the circular argument that, because a property owner has a duty "to reduce, minimize or eliminate foreseeable risks before they manifest themselves as particular dangerous conditions on the premises," *Markowitz,* 826 So.2d at 259, the County had a "duty to periodically inspect and determine whether passengers were in fact bringing wheelchairs onto the moving walkways" [D.E. 45 at 10]. As discussed above, the negligent mode of operation theory is essentially an alternative negligence theory that does not require a plaintiff to establish actual or constructive knowledge of the hazard because the defendant *created* the hazard, thus satisfying the foreseeability component. *Markowitz,* 826 So.2d at 260. Plaintiff has not cited any evidence in the record showing that Miami–Dade County created the hazard posed by wheelchairs on the walkway. More importantly, Plaintiff has failed to show that the County had any ongoing "operation" in the

terminal at the time of his injury. As Plaintiff has stipulated, "Norwegian *occupies and runs* Terminal C white its cruise ships are in port" [D.E. 48 at 7] (emphasis added). Thus, it is undisputed that the only "operation" in the terminal at the time was Norwegian's, not the County's.[10] The County may not be found liable on a theory of negligent operation where Plaintiff has failed to put forward any evidence showing that the County was operating the terminal where the injury took place.

It is undisputed that Miami–Dade County owns the moving walkway and is responsible for its operation and maintenance [D.E. 48 at 7–8; D.E. 39 ¶ 15; D.E. 39–3 at 19]. In circumstances such as these, a property owner has a duty to maintain the premises in a reasonably safe condition. *See Burton,* 78 So.3d at 734. The Court therefore finds that the "negligent mode of operation" theory of liability is not applicable in this case.

### 3. The duty to control third parties

▆▆▆▆▆ Plaintiff argues that Miami–Dade County had a duty to control the unknown woman who collided with him to prevent her from taking the wheelchair on the walkway [D.E. 45 at 10]. Generally, "there is no duty to control the conduct of a third person to prevent that person from causing physical harm to another." *Knight v. Merhige,* 133 So.3d 1140, 1145 (Fla.Dist.Ct.App.2014). An exception to this rule imposes liability on a defendant for the harmful acts of a third person where there is a "special relationship" between the defendant and the plaintiff that requires the defendant to "guard his charge against harm from others." *Id.* Absent a special relationship between a defendant and a plaintiff, a duty to protect

a plaintiff from harm from a third party may arise if the defendant is in actual or constructive control of: (1) the instrumentality of the harm; (2) the premises on which the tort was committed; or (3) the person who committed the tort. *Id.* at 1146.

▆▆▆ Plaintiff first argues that Miami–Dade County had a "special relationship" with him because he was a business invitee [D.E. 45 at 10]. Florida courts have recognized several such "special relationships," including a common carrier-passenger relationship, a landlord-tenant relationship, a school-pupil relationship, and the hospital patient relationship, and the law "continues to evolve on the special relationships that might give rise to a duty." *Lee v. Huffmaster Crisis Response, LLC,* 466 Fed.Appx. 822, 825 (11th Cir.2012); *Knight,* 133 So.3d at 1145–46 (collecting cases). In several circumstances, Florida courts have held that a property owner's duty of reasonable care includes the duty to protect an invitee from injury from third parties. *See, e.g., Winn–Dixie Stores, Inc. v. Johstoneaux,* 395 So.2d 599, 599–600 (Fla.Dist.Ct.App. 1981); *Fernandez v. Miami Jai–Alai, Inc.,* 386 So.2d 4, 5 (Fla.Dist.Ct.App.1980); *Rotbart v. Jordan Marsh Co.,* 305 So.2d 255, 256 (Fla.Dist.Ct.App.1974); *Johnson v. Hatoum,* 239 So.2d 22, 24–25 (Fla.Dist. Ct.App.1970); *Stevens v. Jefferson,* 436 So.2d 33, 34 (Fla.1983). However, this duty to protect business invitees is based "not on legal ownership of the premises, but on the rights of possession, custody and control of the premises." *Wal–Mart Stores, Inc. v. McDonald,* 676 So.2d 12, 15 (Fla.Dist.Ct.App.1996). This is because this duty is premised "on the right to control access by third parties which right

---

**10.** Notably, the Court could not find any case in Florida or elsewhere in which a Plaintiff asserted a claim under a "negligent mode of operation" theory against a property owner

who had leased the premises or otherwise ceded control of the premises to another business enterprise.

usually exists in the one in possession and control of the premises." *Bovis v. 7–Eleven, Inc.,* 505 So.2d 661, 664 (Fla.Dist.Ct. App.1987); *see also Publix Super Markets, Inc. v. Jeffery,* 650 So.2d 122, 125 (Fla.Dist.Ct.App.1995) ("a possessor of land in this context is 'a person who is in occupation of the land *with the intent to control it* ' ") (emphasis added).

In this case, it is undisputed that Norwegian, not Miami–Dade County, controlled the terminal at the time of Plaintiff's injury. According to the County's unrebutted Statement of Facts, "the County turns over the Cruise Terminal to Norwegian" after completing a security sweep for unattended bags or people hiding [D.E. 39 ¶ 54].[11] Indeed, Plaintiff has admitted in his Statement of Facts that "Norwegian *occupies and runs* Terminal C while its cruise ships are in port" [D.E. 48 at 7] (emphasis added). Because the County did not exercise control over the terminal at the time of the accident, the County was not in a position to control the woman who collided with Plaintiff or any other third parties. Therefore, Miami–Dade County did not have a duty to control the woman with the wheelchair for the protection of Plaintiff.

After reviewing the parties' arguments, the Court finds that Miami–Dade County, as the owner of the premises, only had the duty to maintain the premises in a reasonably safe condition and the duty to warn of known dangers. *See Burton,* 78 So.3d at 734. It is undisputed that the people mover was functioning normally at the time of Plaintiff's accident [D.E. 39 ¶ 52;[12] D.E. 39–3 at 21–22; D.E. 39–4 at 14]. Therefore, the Court finds that Plaintiff has failed to meet its burden to make a suffi-

cient showing to establish the existence of a breach of the duty to maintain the premises. *See Cleveland,* 526 U.S. at 805–06, 119 S.Ct. 1597. Thus, the sole remaining issues are whether there are facts in the record showing that Miami–Dade County breached its duty to warn of known dangers, and if this alleged breach was the proximate cause of Plaintiff's injuries.

### B. The Duty to Warn and Proximate Cause

Under Florida law, "there can be no liability for any tort unless it be shown that the defendant's act or omission was a cause-in-fact of the plaintiff's claimed injuries." *50 State Sec. Serv., Inc. v. Giangrandi,* 132 So.3d 1128, 1149 (Fla. Dist.Ct.App.2013) (quoting *Stahl v. Metro. Dade Cnty.,* 438 So.2d 14, 17 (Fla.Dist.Ct. App.1983)). Causation-in-fact "requires proof that 'but for' the defendant's negligence, the harm would not have occurred." *Id.* Thus, to prove the proximate cause element of his negligence claim, Plaintiff must show that he would not have been injured "but for" Miami–Dade County's failure to adequately warn of the danger of wheelchairs on the walkway. However, as previously discussed,[13] Plaintiff has not put forward any evidence showing that the accident would not have occurred had Miami–Dade County adopted more prominent warning labels or employed other means of warning passengers about the dangers of wheelchairs on the people mover. It would simply be speculation to find, in the absence of any record evidence, that the unknown woman who collided with Plaintiff would not have brought the wheelchair on the walkway had the County employed more or better warnings; nor is there any evidence suggesting that Plaintiff would

---

**11.** Because Plaintiff has failed to address this assertion of fact by the County, the Court considers it undisputed for purpose of this motion. *See* Fed.R.Civ.P. 56(e); Local Rule 56.1(b).

**12.** Plaintiff has also failed to rebut this assertion of fact.

**13.** See *supra* at 16–18.

have noticed the woman with the wheel-chair and refrained from using the people mover if he had been alerted to the danger by a warning from the County. Proximate cause must be based on more than "mere speculation." *See John Morrell*, 534 F.Supp.2d at 1353. Because Plaintiff has not put forward any evidence that his injury was proximately caused by Miami–Dade County's alleged failure to adequately warn passengers of the dangers of wheel-chairs on the people mover, any claim based on the county's failure to warn must fail.[14]

In sum, the Court finds that Plaintiff has not produced any evidence showing that Miami–Dade County breached its duty to maintain its premises, and he has not produced any evidence showing that his injuries were proximately caused by Miami–Dade County's failure to provide an adequate warning of the danger of wheel-chairs on the people mover. Accordingly, Miami–Dade County's motion for summary judgment on Count IX of the Amended Complaint is GRANTED.

## VI. Conclusion

For the reasons stated above, it is OR-DERED AND ADJUDGED that:

1. Miami–Dade County's Motion to Dismiss the Amended Complaint [D.E. 28] is DENIED.

2. The Norwegian Defendants' Motion to Dismiss the Amended Complaint [D.E. 21] is GRANTED IN PART. Counts I, II, III, IV, VI, VII and VIII of the Amended Complaint are DISMISSED WITH PREJUDICE. The Motion to Dismiss Count V of the Amended Complaint is DE-NIED.

3. Norwegian's Motion for Summary Judgment on Count V of the Amended Complaint [D.E. 40] is GRANTED.

4. Miami–Dade County's Motion for Summary Judgment on Count IX of the Amended Complaint [D.E. 38] is GRANTED.

5. The Defendants shall file a Proposed Order of Judgment within 10 days of the date of this Order.

14. The County also argued that it's conduct was not the proximate cause of Plaintiff's injury because the events leading to the injury—a woman entering the moving walkway pushing a wheelchair, which then became stuck at the end of the walkway, forcing other passengers to maneuver around the woman as she jerked and pulled on the wheelchair to free it, leading her to bump into Plaintiff as he tried to pass her—constituted an "abnormal intervening force," and the County's conduct was therefore not a substantial factor in Plaintiff's injury [D.E. 38 at 14–15]. In some circumstances, courts have found as a matter law that a property owner's alleged negligence may not be a substantial factor in causing the harm when the injury arose from the plaintiff's independent conduct and the actions of a third party on the premises. *See, e.g., Gehr v. Next Day Cargo, Inc.*, 807 So.2d 189, 190–91 (Fla.Dist.Ct.App.2002) (*citing Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99, 99 (N.Y.1928)) (finding that a cargo company's conduct was not the proximate cause of the injuries to a plaintiff who was injured while helping to lift a container for a third party on the defendant's loading dock). Generally, a court should only make a determination on probable cause as a matter of law "where reasonable people could not differ." *Id.* at 190; *see also McCain*, 593 So.2d at 504. Because Plaintiff has not cited any evidence that the County's alleged negligence was the cause-in-fact of his injuries, the Court need not decide whether the woman's actions are an "abnormal intervening force," or "whether the specific injury was genuinely foreseeable or merely an improbable freak." *McCain*, 593 So.2d at 504.